MANN v. McCARROLL, COMMISSIONER OF REVENUES.

4-5615                                    130 S. W. 2d 721

Opinion delivered June 26, 1939.

*Burk Mann, Coleman & Riddick* and *Cockrill, Armistead & Rector,* for appellants.

*Jack Holt,* Attorney General, *Leffel Gentry,* Assistant Attorney General, and *Frank Pace, Jr.,* for appellee.

*Daggett & Daggett,* for interveners.

*Lee Baker* and *Brickhouse & Brickhouse, amici curiae.*

Baker, J. In April of 1937, plaintiff Mann purchased in the State of Alabama, for use in his gin in Lee county, gin machinery and equipment, paying therefor, as we understand the complaint, a little more than $13,-000. There was demanded of him, on the 10th day of May, 1939, by Z. M. McCarroll, Commissioner, a tax of $296.02, purported to have been levied under paragraph (F) § 4, act 154, p. 516, of the Acts of 1937.

In this suit the Rose City Cotton Oil Mill, a corporation, intervened and alleged that it was engaged in the business of processing cottonseed, manufacturing therefrom oil, meal, lint and other products. Its mill is located in Pulaski county. It was further alleged that McCarroll, as commissioner, proceeding under the same provision of said act 154, after an audit made on May 5,

1939, demanded of the intervener a tax on 209 articles purchased outside the State of Arkansas, for use in its mill and being of the value of $27,237.58.

Interveners, W. H. and John C. Howe, partners, doing business under the name of Howe Lumber Company, of Wabash, Arkansas, filed their intervention and alleged that on the 22nd day of March, 1938, the 29th day of March, 1938, and the 9th day of December, 1938, the interveners purchased in the city of Memphis, Tennessee, 39 mules for which they paid in cash the sum of $5,160; that the mules were thereafter transported to their plantation in Phillips county, and have been continuously thereafter in said county and that they have been used in the cultivation, production and harvesting of crops planted and produced on their lands in the year 1938, and subsequent thereto. It is further alleged that the mules were duly assessed as personal property belonging to interveners in said county for the year 1938 and that the tax levied thereon has been paid. The commissioner, however, has notified these interveners that under said § 4, sub-section (F) a tax in the sum of $103.02 was due the state on said mules.

They further alleged that they purchased, in July of 1937, from Hardwicke-Etter Company, f. o. b., Sherman, Texas, gin machinery and equipment of the value of $13,-780.95, and that said machinery was transported and has been installed in their gin at Wabash, Arkansas; that in July, 1937, the interveners purchased from Fairbanks-Morse & Company, f. o. b., St. Louis, Missouri, an engine and boiler and certain equipment therefor, and transported the same to Wabash, Arkansas, paying therefor the sum of $9,850 for such equipment and that they paid to the State of Missouri two per cent. sales tax, levied thereon and that now they are charged, under said act 154, with the two per cent. tax.

The provision of said act 154, under which all this litigation has arisen, is as follows: (F) "Every person, as defined in this act, shall report to the Commissioner as a retail sale the use or consumption by him of

anything on which the sales tax has not been paid under this act which would have been levied had it been sold at retail in this state, and shall pay the sales tax thereon."

It is alleged by the plaintiff and the interveners that the act does not in itself levy or impose a tax on the use or consumption of property, but on the contrary, that the levy of the tax was upon retail sales only and that if said provision of § 4 (F) is interpreted as a levy upon the use or consumption it is in contravention of § 11, art. 16 of the Constitution.

It is also alleged in effect that if the tax be treated as a sales tax upon the purchases made outside of the State of Arkansas it is a burden upon interstate commerce and in conflict with the commerce clause of the Constitution of the United States and is, therefore, void.

There is also an allegation that act 154 originated as bill No. 4 in the Senate of the State of Arkansas, on January 13, 1937; that it was passed on January 27, 1937, but that said Senate bill, on February 7, 1937, was amended in the House of Representatives by the addition or insertion of the questioned paragraph (F) of § 4, and then was returned to the Senate for further consideration and that thereafter, on February 10th, the Senate returned the bill to the house of representatives, where on February 12th the House again amended the bill by adding said paragraph (F) of § 4. On February 16th, said Senate Bill No. 4 was passed by the House as amended and on February 18th the emergency clause was duly adopted and the bill as amended was returned to the Senate. On the 23rd day of February, 1937, the amendment thereto, which had been adopted by the House of Representatives, was duly approved and concurred in by the Senate, and on February 24th the Senate passed the Senate bill as amended and adopted the emergency clause thereto. Said bill thereupon became act No. 154 and was approved by the governor on February 26, 1937.

It is now contended that this provision or amendment, introduced and passed by both the House and Senate, is so much in conflict and contrary to the original

purposes of the bill if given the construction contended for by the appellee, McCarroll, Commissioner, it is in violation of § 21, art. 5, of the Constitution of the State of Arkansas.

The prayer of the plaintiff and of the several interveners was that McCarroll, as Commissioner, be enjoined from attempting to collect the alleged tax, which it was asserted was an illegal exaction.

A demurrer was filed by the Commissioner of Revenues upon the ground that the complaint and several interventions did not state facts sufficient to constitute causes of action. This demurrer was sustained by the trial court, and plaintiff and interveners refusing to plead further, their several actions were dismissed and from this order and decree of dismissal they have prayed an appeal to this court.

We may say in the beginning of this discussion that the view we have taken of this case will make it unnecessary to discuss all of the several matters set forth in the complaints and interventions and dismissed by the trial court. We may, however, discuss some of these propositions to some extent, in order to clarify the respective contentions. Whether the so-called use tax is a property tax has received rather serious consideration, in view of some of our former decisions, and for such light as may be shed upon the present controversy by reason of the recent decision of the United States Supreme Court in the case of *Henneford* v. *Silas Mason Co.*, 300 U. S. 577, 57 S. Ct. 524, 81 L. Ed. 814, wherein Justice CORDOZA, writing the opinion, said: "The privilege of use is only one attribute, among many, of the bundle of privileges that make up property or ownership. *Nashville C. & St. L. Ry. Co.* v. *Wallace*, 288 U. S. 249, 53 S. Ct. 345, 77 L. Ed. 730, 87 A. L. R. 1191, *supra; Bromley* v. *McCaughn*, 280 U. S. 124, 50 S. Ct. 46, 74 L. Ed. 226; *Burnet* v. *Wells*, 289 U. S. 670-676, 53 S. Ct. 761, 77 L. Ed. 1439. A state is at liberty, if it pleases, to tax them all collectively, or to separate the fagots and lay the charges distributively. Ibid. Calling the tax an excise when it is laid solely

upon the use (*Vancouver Oil Co.* v. *Henneford*, 183 Wash. 317, 49 Pac. 2d 14) does not make the power to impose it less, for anything the commerce clause has to say of its validity, than calling it a property tax and laying it on ownership.''

We hope we will not be deemed unduly critical of the opinion of this most learned jurist when we suggest that in many instances a use tax upon property necessarily is a tax upon the property itself, and in all such matters our own Constitution must be the controlling factor.

No doubt, there is much good reason and common sense in the learned Justice's statement that a state is at liberty if it pleases to tax ''the privilege of use as only one attribute, among many, of the bundle of privileges that make up property or ownership.'' He says that the state is at liberty if it pleases to tax them all collectively, or to separate the fagots and lay the charges distributively. No doubt, this is true as to certain classes of property, in some jurisdictions, but it may not be true as to other classes of property. For instance, in many classes of property the use of the property is the only material part or ''fagot,'' so to speak, inherent therein. In such cases wherein the use of the property is the only element of property that gives it value, then there is no refinement of reasoning whereby such use might be taxed without the tax being a tax upon the property itself and not upon some of its attributes. We are saying that a use tax is sometimes necessarily a property tax. No metaphysical distinction can serve any practical purpose to distinguish in such instances a so-called use tax from an actual property tax. This matter was discussed in regard to the so-called gasoline tax, nor do we recall a single case in which this court has upheld the tax on the use of gasoline itself. The material element of property in gasoline, if not its sole and exclusive element, is its use. At least, the one use by which it takes on value, when employed, destroys it. So its almost sole and exclusive use is its value, the property itself. This is true of practically all toilet goods, gun powder, dynamite, all solvents, chemicals, and lubricants used in mining and manufac-

turing. Some of the most common place articles have their value in their use, such as soap. The tax on the use of such article is necessarily a tax on the property. *Standard Oil Co.* v. *Brodie,* 153 Ark. 114, 239 S. W. 753.

The state government and its sub-divisions pay their obligations by the issuance of warrants or vouchers to those to whom they are indebted. A tax upon these warrants was held to be a property tax. *Hixon* v. *School Dist. of Marion,* 187 Ark. 554, 60 S. W. 2d 1027 ; *Sparling* v. *Refunding Board,* 189 Ark. 189, 71 S. W. 2d 182. See further discussion in case of *Ft. Smith* v. *Scruggs,* 70 Ark. 549, 69 S. W. 679.

No one seriously entertained an idea that the tax was one upon the use of representatives or declarations of value, the *indicia* of property in the Hixon case, *supra,* instead of actual property.

We have called attention to these matters merely by way of suggestion and as intimation, at least, that a use tax, so-called and imposed on many articles might not be enforceable, particularly because of that provision of our State Constitution which makes for uniformity and prevents multiple taxation on values. Art. 16, § 5.

Each state has the inherent right and exclusive power to construe and interpret its own constitution. Therefore, in such instances wherein use of property may constitute its sole practical value we might feel constrained to hold that all such taxes come within the purview of the foregoing uniformity provisions of our organic law.

Literally dozens of citations might be set forth to emphasize the practical application of this time honored provision of our constitution. Since the foregoing is not said by way of decision of the controverted question, we omit all such citations and call now special attention to the fact that in the levy of a use tax appropriate and certain language must be employed for that purpose in order not to impinge upon the foregoing salient and absolutely mandatory constitutional provision relating to *ad valorem taxation.*

The view we have taken, however, of the matter now before us does not make it necessary that we decide all the questions and problems suggested above, but this is done by way of introduction of the real controversy presented for consideration. We hope we have made clear the idea that a tax levied must be certain and definite, not only as to the purpose for which it was levied, but as to the fact that such levy was made and imposed upon the property or right therein.

The title of act 154, as appears from the published acts, is "Arkansas Retail Sales Tax Law." It is an act to provide for the raising of revenue for certain purposes; it provides the machinery for the collection of the sales tax. In § 3 definitions are given of the terms used. A sale at retail is defined. There is an express provision that a sale at retail shall not include an isolated or occasional sale of tangible personal property, substance or things, by a person not engaged in such business. The term retailer is defined to mean any person, persons, or partnership firm or corporation, engaged in "sales at retail."

Section 4 is specific in that it levies a tax. "There is hereby levied upon and shall be collected from all retail sales, as herein defined, a tax of 2 per cent of the gross proceeds derived from said sales." In this same § 4 there is this statement that: "The tax imposed by this section shall apply to:" then follow the several paragraphs designated as "(A)," "(B)," "(C)," "(D)," "(E)," and "(F)," the questioned paragraph, and provision. Now all the foregoing designated paragraphs to "(E)," inclusive, beyond doubt, relate to the sale tax and its application to things sold. Following a natural and orderly sequence we look to "(F)," also to demonstrate or even expand or enlarge the field for the application of the sales tax. It would, indeed, be unusual, if not actually grotesque, to discover in this situation the levy of a new or different tax with a provision for its collection.

If (F) does not relate to the sales tax why should the "person" mentioned report as a retail sale the use, etc.,

of property on which "sales tax has not been paid under this act?" The concluding provision is: "and shall pay the sales tax thereon." There is no provision similar or dissimilar for the payment of a "use tax."

There is no controversy about these several sub-divisions (A), (B), (C), (D), and (E), but (F) is the questioned provision. Now it is contended by the appellee that sub-division (F) in itself levies or imposes the use tax. We have just called attention to the imposition of the sales tax in a quoted portion of said § 4. The only tax, therefore, that is imposed is a sales tax. We seek in vain for any language that lays or imposes a "use tax." We may not so amend an act of the Legislature to levy and collect a tax apparently not even contemplated by the law-making body. If sub-division (F) be given any interpretation or construction at all, it must be such interpretation or construction as will relate to the only tax that is imposed by said act 154, and that is the retail sales tax. Apparently the Commissioner of Revenues gave only one interpretation or construction to this provision for approximately or about two years from and after the passage of the act and that is, that this particular provision was such as to aid in the collection of the sales tax that had been imposed by the first part of said § 4 above quoted. This section had been in existence for approximately two years, had been enforced as a part of the sales tax provision, a complement thereof, before it was interpreted to levy a use tax on property that was bought outside of the state and brought into it.

Substantially the appellee argues that no sales tax could be levied on a sale made in another state which was thereafter to be brought into the state; that such a tax, that is a sales tax, on a sale made in another jurisdiction would be an unwarranted burden on interstate commerce in violation of the commerce clause of the United States Constitution, and, therefore, invalid.

The quoted first part of § 4 above set out indicates clearly that the Legislature knew a tax had to be levied or imposed before it could be collected and there can be

no question that it levied a sales tax. There is no language whereby a use tax was levied or by which such fact might be determined by actual or necessary implication. In fact, the very provisions which the appellee now argues are sufficient to levy a use tax and provide for its collection designate such tax as was levied as the sales tax levied in the first part of this section.

What we have said about the fact that this provision of the statute as heretofore construed by the Commissioner of Revenues is not intended in any manner as a criticism of that officer for any dereliction of duty. No such criticism would be warranted. But it is a fact, not now open to controversy that if the Legislature did intend to levy and provide machinery for the collection of a use tax, that fact was so hidden and concealed as not to be readily discoverable. As we have heretofore stated, it is conceded that if this provision of the act must be treated as a sales tax on sales made in other states, it is illegal and unenforceable. It is on that account that the Commissioner of Revenues now argues that it is a use tax, although the language used in this provision refers only to a sales tax.

It may be said in passing that a sales tax and a use tax are by no means identical. The rule is that in a sales tax the property sold changes hands. There is a change of ownership. The new owner who purchases pays the sales tax to the seller who becomes the agent for the state for its collection.

The buyer pays the tax as an incident to the price. In a use tax there is no change of possession, no change of ownership, but the owner pays this tax which is an excise or exaction charged because of the owner's privilege to exercise or assert some of the elements of ownership over the property. In the use tax the seller does not collect the tax as an agent for the state, but the buyer, according to the contention made here, must account for the property which he actually owns and pay a tax allegedly of the same percentage as a sales tax. The appellants, or interveners in this case are not in the position of one

who contends that his property is exempt from some general tax, and that, therefore, he must show, as was recently held, practically beyond a reasonable doubt that his property is exempt. See *McCarroll, Commissioner* v. *Mitchell, ante* p. 435, 129 S. W. 2d 611.

The question raised here is whether a use tax has been levied or imposed upon the property. The law is, as we understand it, that the imposition or levying of a tax shall be direct and specific, and, if there is any doubt about the fact of the levy, such doubt must be resolved in favor of the taxpayer. See *McDaniel* v. *Byrkett*, 120 Ark. 295, 297, 179 S. W. 471; *United States* v. *Updike*, 281 U. S. 489, 50 S. Ct. 367, 74 L. Ed. 984.

Indeed, every citizen has a right to know and be informed whether a tax has been levied that affects his property or the exercise of any of his rights of ownership therein and such levy will not be construed as having been made to supply and fill in an apparent omission or dereliction of the lawmaking body. That is neither our duty nor purpose, and by the foregoing expression we do not mean to imply that there was or is the possibility of such omission or dereliction. In fact, the language of subdivision (F) of § 4 aforesaid, is clearly illustrative of the contrary theory.

The purpose of the said sub-division (F) aforesaid, is valid beyond a question if it be treated purely as part of the machinery to aid in the collection of a sales tax, and not in fixing liability upon property not subject thereto.

But if there are two or more interpretations to be given a provision of the statute, one of which is legal and enforceable, and the other, of at least doubtful legality, if not admittedly illegal, it becomes our duty to adopt that construction consistent with the language admitted to be legal. The suggestion that the retail dealer who takes from his stock articles held therein for retail sale by him, upon which tax should be collected, is subject to the tax is not inconsistent with the language used and must admittedly be an interpretation under which the language

so interpreted must be regarded as legal and enforceable. Well known business practices make clear what was intended. Mr. Retail Dealer, for the purposes of knowing what he is doing in the conduct of his business, for the maintenance of his insurance contracts, takes careful invoices and checks all his purchases. He deducts therefrom his daily sales and these daily sales, if his books are correct, must include also his own abstractions from his stock, so he in form, at least, is Mr. Consumer who purchases from Mr. Retail Dealer. Mr. Retail Dealer should, therefore, under this provision of the law account for such sales tax to the same extent as if he had bought his goods from his neighbor next door. It is true in some instances there may not be a parting of title or possession as between seller and purchaser, but there is the sales and the taking from the stock the goods the consumer accepts to the same extent and with the same effect as if they had been bought by one, a total stranger to the business. This interpretation of the questioned provision of the law is in conformity with its language with a declared purpose and constituting a part of the machinery set up by the Legislature to aid in the collection of these revenues due and owing to the state and does not permit a discrimination whereby a retail dealer may be exempt from sales taxes and his neighbor be forced to pay them. We are, therefore, of the opinion that this sub-division does not levy or impose a use tax and until such tax is levied and imposed, of course, the question does not arise as to its validity, whether it be a property tax or otherwise.

We call attention to the fact that it has been argued that unless this provision of the statute be declared as one imposing the use tax, fixing the amount thereof and providing the machinery for collection, the state will lose immense amounts of revenue that would otherwise be collectible. It is also argued that merchants are entitled to have this construction placed upon this act of the Legislature for their protection, in order that local citizens will not make purchases abroad in order to avoid the sales tax. We acknowledge the forcefulness and cog-

ency of these statements and the only answer we desire to make to them is that they are proper arguments to be made to the legislative assemblies, and they become proper to present to judicial tribunals only when it is apparent from the language of the act itself that it was the legislative intent so to safeguard the public revenues and to protect one class of its citizens against the alleged wrong doing by others in the evasion of taxes by trading in tax-free areas.

Our attention has been called to the fact that the Legislature was not unmindful that people might be tempted to trade in other states in order to avoid the taxes imposed. Provisions have been made for the reduction of taxes where the local citizen could secure an advantage by merely going across the state line to make his purchases. Our attention has heretofore been called to certain matters of this kind and has been given due consideration, but they are problems for legislative solution and not for correction by judicial interpretation. *Wiseman* v. *Phillips,* 191 Ark. 63, 84 S. W. 2d 91. *Kibler* v. *Parker,* 191 Ark. 475, 86 S. W. 2d 925.

From what we have said, we think the other interesting questions stated in the beginning of this opinion need not be discussed as it is apparent that the court erred in sustaining the demurrer to the complaint and the several interventions.

The judgment is, therefore, reversed, with directions to overrule the demurrer and take such further action as may be necessary not inconsistent with this opinion.