## McLEOD, COMMISSIONER OF REVENUES, *v.* J. E. DILWORTH CO. ET AL.

No. 311. Argued February 4, 1944.—Decided May 15, 1944.

*Mr. Leffel Gentry* for petitioner.

*Mr. J. Fred Brown,* with whom *Mr. Allan Davis* was on the brief, for the J. E. Dilworth Co.; and *Mr. William H. Daggett* for the Reichman-Crosby Co., respondents.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

We are asked to reverse a decision of the Supreme Court of Arkansas holding that the Commerce Clause precludes liability for the sales tax of that State upon the transactions to be set forth.

We take the descriptions of these transactions from the opinion under review. Respondents are Tennessee corporations with home offices and places of business in Memphis where they sell machinery and mill supplies. They are not qualified to do business in Arkansas and have neither sales office, branch plant nor any other place of business in that State. Orders for goods come to Tennessee through solicitation in Arkansas by traveling salesmen domiciled in Tennessee, by mail or telephone. But no matter how an order is placed it requires acceptance by the Memphis office, and on approval the goods are shipped from Tennessee. Title passes upon delivery to the carrier in Memphis, and collection of the sales price is not made in Arkansas. In short, we are here concerned with sales made by Tennessee vendors that are consummated in Tennessee for the delivery of goods in Arkansas.

For such sales, the Supreme Court of Arkansas had held, in 1939, the State had no power to exact a sales tax, *Mann v. McCarroll,* 198 Ark. 628, 130 S. W. 2d 721. The Arkansas legislation then in force was Act 154 of 1937. The transactions on which the Collector here seeks to tax extended over periods that bring into question Act 154 (extended by Act 364 of 1939) and a new Statute (Act 386 of 1941), known as the Gross Receipts Act. The Arkansas Supreme Court gave the Act of 1941 the same scope and significance as it attributed to the Act of 1937, that is, an act imposing a retail sales tax and not a use tax. In view of this construction, it has adhered to its earlier decision in *Mann v. McCarroll,* finding nothing in our intervening decision in *McGoldrick v. Berwind-White Co.,* 309 U. S. 33, requiring a change in its constitutional views. 205 Ark. 780, 171 S. W. 2d 62. To permit further examination of the complicated problems raised by the interplay of federal and state powers we brought the case here. 320 U. S. 728.

We agree with the Arkansas Supreme Court that the *Berwind-White* case presented a situation different from this case and that this case is on the other side of the line which marks off the limits of state power. A boundary line is none the worse for being narrow. Once it is recognized, as it long has been by this Court, that federal and state taxation do not move within wholly different orbits, that there are points of intersection between the powers of the two governments, and that there are transactions of what colloquially may be deemed a single process across state lines which may yet be taxed by the State of their occurrence, "nice distinctions are to be expected," *Galveston, H. & S. A. Ry. Co.* v. *Texas,* 210 U. S. 217, 225. The differentiations made by the court below between this case and the *Berwind-White* case are relevant and controlling. "The distinguishing point between the Berwind-White Coal case and the cases at bar is that in the Berwind-White Coal case the corporation maintained its sales office in New York City, took its contracts in New York City and made actual delivery in New York City. . . ." 205 Ark. at 786. This, according to practical notions of what constitutes a sale which is reflected by what the law deems a sale, constituted a sale in New York and accordingly we sustained a retail sales tax by New York. Here, as the Arkansas Supreme Court continued, "the offices are maintained in Tennessee, the sale is made in Tennessee, and the delivery is consummated either in Tennessee or in interstate commerce with no interruption from Tennessee until delivery to the consignee essential to complete the interstate journey." Because the relevant factors in the two cases decided together with the *Berwind-White* case were the same as those in *Berwind-White,* the decision in that case controlled the two other cases. "In both cases the tax was imposed on all the sales of merchandise for which orders were taken

within the city and possession of which was transferred to the purchaser there. Decision in both is controlled by our decision in the *Berwind-White Company* case." *McGoldrick* v. *Felt & Tarrant Co.*, 309 U. S. 70, 77. In *Berwind-White* the Pennsylvania seller completed his sales in New York; in this case the Tennessee seller was through selling in Tennessee. We would have to destroy both business and legal notions to deny that under these circumstances the sale—the transfer of ownership—was made in Tennessee. For Arkansas to impose a tax on such transaction would be to project its powers beyond its boundaries and to tax an interstate transaction.

It is suggested, however, that Arkansas could have levied a tax of the same amount on the use of these goods in Arkansas by the Arkansas buyers, and that such a use tax would not exceed the limits upon state power derived from the United States Constitution. Whatever might be the fate of such a tax were it before us, the not too short answer is that Arkansas has chosen not to impose such a use tax, as its Supreme Court so emphatically found. A sales tax and a use tax in many instances may bring about the same result. But they are different in conception, are assessments upon different transactions, and in the interlacings of the two legislative authorities within our federation may have to justify themselves on different constitutional grounds. A sales tax is a tax on the freedom of purchase—a freedom which wartime restrictions serve to emphasize. A use tax is a tax on the enjoyment of that which was purchased. In view of the differences in the basis of these two taxes and the differences in the relation of the taxing state to them, a tax on an interstate sale like the one before us and unlike the tax on the enjoyment of the goods sold, involves an assumption of power by a State which the Commerce Clause was meant to end. The very purpose of the Commerce Clause was to create an area of free trade among the several States.

That clause vested the power of taxing a transaction forming an unbroken process of interstate commerce in the Congress, not in the States.

The difference in substance between a sales and a use tax was adverted to in the leading case sustaining a tax on the use after a sale had spent its interstate character: "A tax upon a use so closely connected with delivery as to be in substance a part thereof might be subject to the same objections that would be applicable to a tax upon the sale itself." *Henneford* v. *Silas Mason Co.*, 300 U. S. 577, 583. Thus we are not dealing with matters of nomenclature even though they be matters of nicety. "The state court could not render valid, by misdescribing it, a tax law which in substance and effect was repugnant to the Federal Constitution; neither can it render unconstitutional a tax, that in its actual effect violates no constitutional provision, by inaccurately defining it." *Wagner* v. *City of Covington*, 251 U. S. 95, 102. Though sales and use taxes may secure the same revenues and serve complementary purposes, they are, as we have indicated, taxes on different transactions and for different opportunities afforded by a State.

A very different situation underlay *Wisconsin* v. *J. C. Penney Co.*, 311 U. S. 435. The Wisconsin Supreme Court and this Court were concerned with an exaction on a transaction which the Wisconsin Court described one way and we another. We looked behind the labels to the thing described, and the thing—taxation of the distribution of income earned in Wisconsin—did not offend the Federal Constitution. That case affords no ground for rejecting the deliberate choice of a State to impose a tax on a transfer of ownership and sustaining it, where the transfer was made beyond the State limits, as a use tax on that property because the State might, so far as the Federal Constitution is concerned, have enacted a use tax and such a use tax might have been collected on the

332

enjoyment of the goods so sold. Such a mode of adjudication would imply a duty of excessive astuteness on our part to contract the area of free trade among the States.

*Judgment affirmed.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK and MR. JUSTICE MURPHY concur, dissenting:

The present decision marks a retreat from the philosophy of the *Berwind-White* case, 309 U. S. 33. It draws a distinction between the use tax (*Felt & Tarrant Co.* v. *Gallagher,* 306 U. S. 62) and the sales tax which on the facts of this case seems irrelevant to the power of Arkansas to tax. And it is squarely opposed to *McGoldrick* v. *Felt & Tarrant Co.,* 309 U. S. 70, which should be overruled if the present decision goes down.

*Felt & Tarrant Co.* v. *Gallagher* involved a use tax. The State of the buyer (California) was allowed to exact the tax from the Illinois seller for goods sold to California buyers though the seller's activities in California were not different in quality and hardly more numerous than the Arkansas activities of the Tennessee sellers in the present case. Though in some cases deliveries were made by the local agent for Felt & Tarrant, in others shipments were made by it from Illinois direct to the buyers in California. And in that case, as in the present case, the orders were accepted outside the State of the buyer and remittances were made direct to the out-of-state seller.

In *McGoldrick* v. *Felt & Tarrant Co.* we allowed New York City to collect its sales tax on sales which Felt & Tarrant made to New York purchasers under substantially the same course of dealing as obtained in case of the California use tax. Moreover, there were other transactions in *McGoldrick* v. *Felt & Tarrant* which were even closer to the sales in the present case. I refer to the sales to New York City buyers by a Massachusetts corporation

(Du Grenier, Inc.) which was not authorized to do business in New York and which had no employee there. Another company, Stewart & McGuire, Inc., acted as its exclusive agent and solicited orders in New York City. The orders were forwarded to Massachusetts where they were accepted. Shipments were made by rail or truck (F. O. B. Haverhill, Mass.) to the purchaser in New York City, who paid the freight. Yet we allowed New York City to collect its sales tax on those transactions.

If the federal Constitution does not prohibit New York City from levying its sales tax on the proceeds of those interstate transactions or California from exacting its use tax at the final stage of an interstate movement of goods, I fail to see why Arkansas should be prohibited from collecting the present tax.

It is not enough to say that the use tax and the sales tax are different. A use tax may of course have a wider range of application than a sales tax. *Henneford* v. *Silas Mason Co.*, 300 U. S. 577. But a use tax and a sales tax applied at the very end of an interstate transaction have precisely the same economic incidence. Their effect on interstate commerce is identical. We stated as much in the *Berwind-White* case where, in speaking of the sales tax, we said (309 U. S. p. 49): "It does not aim at or discriminate against interstate commerce. It is laid upon every purchaser, within the state, of goods for consumption, regardless of whether they have been transported in interstate commerce. Its only relation to the commerce arises from the fact that immediately preceding transfer of possession to the purchaser within the state, which is the taxable event regardless of the time and place of passing title, the merchandise has been transported in interstate commerce and brought to its journey's end. Such a tax has no different effect upon interstate commerce than a tax on the 'use' of property which has just been moved

in interstate commerce," citing use tax cases including *Henneford* v. *Silas Mason Co.* and *Felt & Tarrant Co.* v. *Gallagher.*

The sales tax and the use tax are, to be sure, taxes on different phases of the interstate transaction. We may agree that the use tax is a tax "on the enjoyment of that which was purchased." But realistically the sales tax is a tax on the receipt of that which was purchased. For as we said in the excerpt from the *Berwind-White* case quoted above, it is the "transfer of possession to the purchaser within the state" which is the "taxable event regardless of the time and place of passing title." And *McGoldrick* v. *Felt & Tarrant Co.* makes plain that the transfer of possession need not be by the seller, for in that case, as in the present one, deliveries were made by common carriers which accepted the goods F. O. B. at points outside the State. In terms of state power, receipt of goods within the State of the buyer is as adequate a basis for the exercise of the taxing power as use within the State. And there should be no difference in result under the Commerce Clause where, as here, the practical impact on the interstate transaction is the same.

It is no answer to say that the Arkansas sales tax may not be imposed because the out-of-state seller was "through selling" when the tax was incurred. That was likewise true of both the use tax cases, including *General Trading Co.* v. *State Tax Commission, post,* p. 335, and the sales tax decision in *McGoldrick* v. *Felt & Tarrant Co.* The question is whether there is a phase of the interstate transaction on which the State of the buyer can lay hold without placing interstate commerce at a disadvantage. There is no showing that Tennessee was exacting from these vendors a tax on these same transactions or that Arkansas discriminated against them. I can see no warrant for an interpretation of the Commerce Clause which

puts local industry at a competitive disadvantage with interstate business. If there is a taxable event within the State of the buyer, I would make the result under the Commerce Clause turn on practical considerations and business realities rather than on dialectics. If that is not done, I think we should retreat from the view that interstate commerce should carry its fair share of the costs of government in the localities where it finds its markets and adopt the views expressed in the dissent in the *Berwind-White* case.

MR. JUSTICE RUTLEDGE also dissents. For his opinion, see *post*, p. 349.