STEWARTS' PHARMACIES, LIMITED *v.* EARL W. FASE, TAX COMMISSIONER, TERRITORY OF HAWAII.

Nos. 4040 and 4041.

Argued December 16, 1958.    Decided February 11, 1959.

Rice, C. J., Stainback and Marumoto, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

We have before us two submissions on agreed facts by the same parties involving a single question of law as to whether the Compensating Tax Law, R.L.H. 1955, Ch. 118, is valid under the commerce clause of the Constitution of the United States.

The parties have agreed to the following facts:

1. Taxpayer is a retailer licensed under the General Excise Tax Law, R.L.H. 1955, Ch. 117. It owns and operates in Honolulu a number of stores at which it sells drugs and other merchandise to consumers. It obtains the merchandise which it sells from four sources, namely:

A. Wholesalers licensed under the General Excise Tax Law. With respect to merchandise from this source, the wholesalers pay the tax under the General Excise Tax Law at the rate applicable to wholesalers.

B. Sellers not doing business in the Territory and not licensed under the General Excise Tax Law, having in the Territory "representatives" within the meaning of the Compensating Tax Law. Such representatives are independent contractors established in business in the Territory and having their own offices where they do business as representatives for several lines of merchandise. They receive commissions from the sellers, who in most cases are the manufacturers of the products sold. They procure orders and forward them to the extraterritory offices of the sellers, where the orders are subject to acceptance or rejection. If the orders are accepted, which usually occurs, they are filled by direct shipment from extraterritory points to taxpayer on credit and taxpayer remits the purchase price plus amounts advanced by the sellers for freight to the extraterritory offices of the sellers. With respect to merchandise from this source, taxpayer had been paying the tax under the Compensating Tax Law but has discontinued such payment on the ground that the law violates the commerce clause.

C. Sellers not doing business in the Territory and not licensed under the General Excise Tax Law, who do not have representatives in the Territory. Taxpayer obtains merchandise from this source by sending orders by mail or wireless to the extraterritory offices of the sellers, where the orders are accepted and filled as stated in connection with purchases from source B. With respect to merchandise from this source, no tax is paid either under the General Excise Tax Law or under the Compensating Tax Law.

D. Local manufacturers licensed under the General Excise Tax Law. With respect to merchandise from this source, the manufac-

turers pay the tax under the General Excise Tax Law at the rate applicable to manufacturers who sell to retailers.

2. It is more convenient for taxpayer to obtain merchandise from sources A and B than from source C because in the former instances the wholesalers or the representatives constitute points of local contact.

3. Other things being equal, taxpayer purchases from source C in preference to source A or source B because of the difference in costs resulting from the fact that no tax applies with respect to purchases from source C.

4. Except for the Compensating Tax Law, other things being equal, taxpayer will purchase from source B in preference to source A or source C. The existence of the law, and the tax which it imposes or purports to impose, has caused representatives and those represented by them to lose business.

5. With respect to purchases from source D, some of the products involved in such purchases can only be obtained from local manufacturers, but other products, such as stationery and perfume, may be obtained from source A, B, or C.

Case No. 4040 involves an assessment under the Compensating Tax Law, at the rate in effect before the 1957 amendment to the law, covering merchandise obtained from source B and added to taxpayer's stock in September 1956. Case No. 4041 involves an assessment under the same law, at the rate in effect after the 1957 amendment, covering merchandise so purchased and added to taxpayer's stock in July, 1957. Taxpayer does not dispute that such assessments were duly made and are correct, except insofar as its contention as to the constitutionality of the law may be sustained. In order to perfect its appeal under R.L.H. 1955, § 118-7, taxpayer paid the taxes as assessed, and the amounts so paid are now held by the Treasurer of the Territory pending the determination of the instant submissions.

While the submissions involve the constitutionality of the Compensating Tax Law only, a background knowledge of the General Excise Tax Law and the Consumption Tax Law, and their relationship to the Compensating Tax Law, is essential for a full understanding of the question at hand.

The General Excise Tax Law is the principal revenue producer in the tax system of the Territory. It imposes a tax on the privilege of engaging in business and other activities, including retailing, wholesaling, manufacturing, and acting as representatives or purchasing agents as defined in the Compensating Tax Law. The tax is measured by the gross income derived from the business and other activities engaged in. The rates are variable, depending on the nature of the business and other activities.

The Consumption Tax Law imposes a tax with respect to the use or consumption in the Territory of property in the hands of consumers as to which the excise tax on retailers has not been paid. It was enacted to complement the General Excise Tax Law. The rate of tax under it is equated to the excise tax on retailers. It serves the same function as the complementary use tax in a state which has a sales tax law.

The Compensating Tax Law imposes "an excise tax on the use in this Territory of tangible personal property which * * * is purchased from an unlicensed seller for use in this Territory, through the activity or with the assistance of a purchasing agent or representative * * *." The tax accrues when the property is acquired by the purchaser and "becomes subject to the taxing jurisdiction of the Territory." According to the definitions in the law, "use" is any use, or the keeping for use or sale, of property and includes the exercise of any right or power incident to ownership; "unlicensed seller" is a seller who, with respect to the particular sale, is not subject to the tax imposed by the General Excise Tax Law; and "representative" is a salesman, commission agent, manufacturer's representative, broker or other person who is authorized or employed by an unlicensed seller to assist such seller in selling property for use in the Territory by procuring orders for such sales and who carries on such activities in the Territory, it being immaterial whether such activities are regular or intermittent. A manufacturer's representative whose functions are purely promotional and do not include the procuring, soliciting or accepting of orders for property, the making of deliveries, the collection of payments for deliveries, or the keeping of books of account concerning such orders, deliveries or collections is not a representative as defined in the law. We need not consider the definition of purchasing agent be-

cause the submissions do not refer to any purchase brought about by the activities of such agent.

The quoted provision of the law seemingly applies to any use in the Territory of property acquired by any purchaser from an unlicensed seller through the intervention of a purchasing agent or a representative. However, under other provisions, the use of property so acquired by wholesalers, jobbers, consumers, and manufacturers who sell to retailers is excepted from the coverage of the law, and the meaning of use is reduced to the keeping of property by retailers for resale. Shorn of involved legal verbiage, the law taxes an incident of ownership of one segment of the stock of merchandise held by retailers in the Territory for the purpose of resale as to which the tax on wholesaling under the General Excise Tax Law has not been paid. The taxed incident of ownership is the keeping for resale. The taxed segment is that portion of the retailers' stock which has been purchased through the activities of purchasing agents and representatives. To that limited extent, the law complements the General Excise Tax Law at the level of wholesalers. The rate of the tax is equated to the excise tax on wholesalers. It is not complementary to the General Excise Tax Law to the extent that the Consumption Tax Law is complementary to the General Excise Tax Law at the level of retailers. It does not tax the keeping for resale by retailers of all property purchased from unlicensed sellers. It omits from its coverage the keeping for resale of the segment of the retailers' stock of merchandise purchased from unlicensed sellers which consists of direct purchases and purchases through the activities of manufacturers' representatives whose functions are purely promotional.

Taxpayer contends that the Compensating Tax Law violates the commerce clause because it discriminates against interstate commerce on its face and in its effect, imposes a tax that is a direct burden on such commerce, and exposes such commerce to the risk of multiple state tax burdens. The commissioner, on the other hand, defends the law on the ground that it merely imposes a tax similar in conception and effect to a use tax, which has been withdrawn from the arena of debate by *Henneford* v. *Silas Mason Co.,* 300 U. S. 577.

In commerce clause cases, the Supreme Court of the United

States faces "the complicated problems raised by the interplay of Federal and state powers" (*McLeod* v. *Dilworth Co.,* 322 U.S. 327, 328), which require the balancing of the conflicting needs of local taxing jurisdictions as against those of the nation and the avoidance of "the sacrifice of what is vital to one for the sake of what is trivial to the other." (Alexander M. Bickel, *The Unpublished Opinions of Mr. Justice Brandeis,* p. 100.) Many years ago, a noted commentator described the task of the court in such cases as follows: "The judicial task * * * is for the most part a task of statesman-like umpiring of a game without any explicit rules. The considerations which determine decision are more often an understanding of practical situations, an appraisal of practical needs and a choice between competing policies than are an interpretation of constitutional phraseology or a knowledge of legal lore." (Thomas Reed Powell, "Umpiring the Federal System, 1922-1924," 40 *Pol. Sci. Q.* 101.) More recently, Mr. Justice Stone lent his support to that description in the following extrajudicial statement made to a law professor who was once his law clerk: "The net result of my reflections * * * is that in the past the Court has probably been too doctrinal and has relied upon judicially contrived formulas as exact rules of decision, rather than upon an analysis of the facts and circumstances of each case, to see whether there really is any burden on interstate commerce distinguishable from the tax burden which may fall on all goods in the state of origin or of destination, both before and after their interstate journey. Of course, in addition to this, there are certain types of taxes which hit the operation of transportation or the goods themselves which could be the means of destroying commerce while in the course of transportation, and which it cannot be assumed that Congress intends to permit. I am inclined to think that if we approached each case in a more practical and concrete fashion and with less deference to formulas and doctrines we would do a better job and avoid making the commerce clause the source of special privileges which benefit particular individuals in such fashion as to amount to no more than subsidies of interstate commerce at the expense of the state taxing power." (Stone, J., to Milton Handler, June 30, 1940, as quoted in Alpheus Thomas Mason, *Harlan Fiske Stone: Pillar of the Law,* p. 494.)

Mr. Justice Stone made his statement two years after *Western Live Stock* v. *Bureau,* 303 U.S. 250 (1938), and almost contemporaneously with *McGoldrick* v. *Berwind-White Co.,* 309 U.S. 33 (1940). He wrote the opinion of the court in both cases. *Western Live Stock* v. *Bureau* is one of the cases upon which the taxpayer relies for its contention that a state tax which exposes interstate commerce to the risk of multiple state tax burdens is invalid under the commerce clause. *McGoldrick* v. *Berwind-White Co.* sustained the validity of sales tax in the state of delivery as applied to what was theretofore considered an interstate transaction, namely, sale of goods shipped in from without the state in fulfilment of a previous order for such goods from within the state. The statement is more enlightening as to the real meaning of recent decisions in commerce clause cases than the reasoning in formal opinions, where the justices address themselves "to exposition and decision, not with the freedom of casual critics or even of studious commentators, but under the pressure and within the limits of a definite official responsibility." (Hughes, C. J., Address on the Occasion of the One Hundred Fiftieth Anniversary of First Session of the Supreme Court, 26 *A.B.A.J.,* 203.)

This is not to say that formal doctrinal pronouncements of the Supreme Court of the United States are unimportant. We do not have the final word on constitutional questions. That being the case, in cases involving such questions, we must follow the principles that we discern from the reading of the opinions in decided cases. Thus, in the consideration of the question at hand, we shall focus our attention on such principles as well as upon the economic impact of the Compensating Tax Law on interstate commerce.

We think that the Compensating Tax Law is valid under *Henneford* v. *Silas Mason Co., supra,* and other prior and subsequent decisions which sustain the validity of state tax laws designed to cause interstate commerce to bear its fair share of the cost of local government in a manner that is not discriminatory of such commerce but "actually puts that commerce upon a plane of equality with local trade in local taxation." (*Nippert* v. *Richmond,* 327 U.S. 416, 434.)

*Henneford* v. *Silas Mason Co.* involved a law of the State of Washington which imposed a "compensating tax" on the intra-

state use of chattels as to which the state retail sales tax had not been paid. The state tax commission stated that "the primary purpose of the compensating tax is to protect the merchants of Washington from discrimination arising by reason of the inability of the State, because of the Federal Constitution, to impose a tax upon sales made to residents of this State by competitive merchants in other states." (Portion of rule 178, as quoted in *Silas Mason Co.* v. *Henneford,* 15 F. Supp. 958, 959.) The effect of the law was to encourage intrastate purchases, and to discourage extrastate purchases, of chattels to be used within the State. The court, nevertheless, held that the law did not violate the commerce clause because the tax that it imposed was not upon the operations of interstate commerce, but upon the privilege of use after such commerce was at an end, and was not so measured or conditioned as to hamper the transactions of interstate commerce or discriminate against them. The holding follows the principle previously established in *Gregg Dyeing Co.* v. *Query,* 286 U.S. 472; *Nashville, C. & St. L. Ry. Co.* v. *Wallace,* 288 U.S. 249; *Edelman* v. *Boeing Air Transport, Inc.,* 289 U.S. 249; and *Monamotor Oil Co.* v. *Johnson,* 292 U.S. 86, that a state may impose an excise tax, nondiscriminatory of interstate commerce in its effect, upon the use or enjoyment of property that is at rest within its borders at the end of interstate journey.

The Washington law imposed a use tax on ultimate consumers. The Compensating Tax Law imposes a tax on use in the narrow statutory sense of the keeping of property by retailers for the purpose of resale. The difference is not material. A use tax is sustained on the basis that the "privilege of use is only one attribute, among many, of the bundle of privileges that make up property or ownership," and a "state is at liberty, if it pleases, to tax them all collectively, or to separate the faggots and lay the charge distributively." (*Henneford* v. *Silas Mason Co., supra,* 582.) In *Gregg Dyeing Co.* v. *Query, supra,* the court sustained a South Carolina law which imposed a tax on the storage of gasoline brought in from other states and held for use within the State, upon which a like state tax had not been paid under other statutes. In so doing, the court stated, at page 478: "It imposes an exaction

with respect to gasoline purchased in other States and brought into South Carolina and there placed by appellants in storage for future use within the State. By the terms of the Act, as construed by the state court and applied to these appellants, interstate commerce in relation to the subject of the tax has ended. The gasoline has come to rest within the State, having been placed in appellants' storage tanks and added to appellants' property kept for local purposes. In such circumstances the State has the authority 'to tax the products or their storage or sale,' " citing *Texas Co.* v. *Brown,* 258 U.S. 466, 478.

Like the Washington law and the South Carolina law, the Compensating Tax Law imposes a tax with respect to property that is no longer in interstate commerce. The assessments in the instant submissions cover merchandise added to taxpayer's stock from source B purchases. When merchandise is added to a retailer's stock, it is definitely taken out of the stream of interstate commerce.

The Washington law was not discriminatory of interstate commerce in that it placed chattels in the hands of the purchasers in the State on an equal basis with respect to state tax burden, regardless of whether they were purchased within the State or across state lines.

Similarly, the Compensating Tax Law is nondiscriminatory of interstate commerce. It makes merchandise added to retailers' stock from source B purchases carry the same local tax burden as merchandise added to retailers' stock from source A purchases. When retailers obtain merchandise from source A, such merchandise is already burdened with the excise tax on wholesalers. The constitutional validity of the excise tax on wholesalers is unquestioned. Merchandise from source B does not carry such burden. Consequently, in the absence of the law, source B merchandise has a competitive advantage over source A merchandise, and business has a tendency to gravitate from source A to source B. The Territory suffers from such a situation in that the base for the excise tax on wholesalers is reduced by the amount of business that shifts from source A to source B. The law captures the tax that will otherwise be lost by such shift in business. It also captures the tax that will otherwise be lost by business going to source B, and not to source A, from the outset.

In one respect, the Compensating Tax Law has a greater claim to validity under the commerce clause than the Washington law. As already noted, the Washington law had the effect of encouraging intrastate purchases and discouraging extrastate purchases. In the economic sense that interstate commerce is commerce in goods imported from without the Territory and local trade is commerce in local products, the Compensating Tax Law has no effect on interstate commerce *vis-a-vis* local trade, at least under the agreed facts. The impact of the law is only upon different methods of handling goods coming into the Territory from without.

The agreed statement that, other things being equal, taxpayer purchases from source C in preference to source A or source B is a statement that it obtains extraterritory products from one source rather than from other sources, not a statement that it obtains local products in preference to products from without the Territory.

The same is true of the statement that, except for the Compensating Tax Law, other things being equal, taxpayer will purchase from source B in preference to source A or source C.

The further statement that the existence of the law causes source B to lose business is in the same paragraph with the preceding statement. From that fact, we may infer that the business lost by source B goes either to source A or to source C, not to source D. Also, the further statement does not indicate what portion of such loss goes to source A, if at all. It may be that all of the loss goes to source C.

The agreed fact with regard to taxpayer's purchases from source D is that some of the products involved in such purchases can only be obtained from local manufacturers but other products may be obtained from source A, B, or C. Products that can only be obtained from local manufacturers do not raise any commerce clause question. With regard to merchandise that may be obtained from source D, as well as from source A, B, or C, there is no showing that the law has the effect of boosting source D purchases and reducing purchases from the other sources. The law obviously does not cause an increase of source D purchases over purchases from source A or source C because it does not impose any tax with respect to source A merchandise or source C merchandise. The impli-

cation from the agreed statement, mentioned in the preceding paragraph, is that no part of the business that source B loses on account of the law goes to source D.

Taxpayer argues that *Henneford* v. *Silas Mason Co.* is not apposite, and directs our attention to certain differences between the Washington law and the Compensating Tax Law which we have not yet discussed.

One of the differences is that, whereas the State of Washington provided for the imposition of the sales tax and the complementary use tax in the same act, the Compensating Tax Law is a separate enactment from the General Excise Tax Law which it complements. Here, *Gregg Dyeing Co.* v. *Query, supra,* is in point. In sustaining the South Carolina law, to which we referred earlier in this opinion, the court stated, at page 479: "The state court answered the contention as to discrimination against interstate commerce by referring to other statutes of the State in imposing a tax upon the sale and use of gasoline within the State. The state court said that the Act in question 'taxes all gasoline stored for use and consumption upon which a like tax has not been paid under other statutes. By kindred Acts all users are taxed.' But appellants question the right to invoke other statutes to support the validity of the Act assailed. To stand the test of constitutionality, they say, the Act must be constitutional 'within its four corners,' that is, considered by itself. This argument is without merit. The question of constitutional validity is not to be determined by artificial standards. What is required is that state action, whether through one agency or another, or through one enactment or more than one, shall be consistent with the restrictions of the Federal Constitution. There is no demand in that Constitution that the State shall put its requirements in any one statute. It may distribute them as it sees fit, if the result, taken in its totality, is within the State's constitutional power."

Another difference is that, whereas the Washington law allowed credit for sales taxes paid to other states, the Compensating Tax Law has no provision for the allowance of credit for the payment of equivalent taxes to other states. On this point, the court stated in *Henneford* v. *Silas Mason Co., supra,* at page 587: "We have not meant to imply by anything said in this opinion that allowance

of a credit for other taxes paid to Washington made it mandatory that there should be a like allowance for taxes paid to other states. A state, for many purposes, is to be reckoned as a self-contained unit, which may frame its own system of burdens and exemptions without heeding systems elsewhere." See, also, *Southern Pacific Co.* v. *Gallager,* 306 U.S. 167, 172.

The difference upon which taxpayer lays the greatest emphasis is that, whereas the Washington law imposed a general use tax, the Compensating Tax Law imposes a tax with respect to merchandise added to retailers' stock from source B purchases only and does not impose any tax with respect to merchandise added to retailers' stock from source C purchases.

In imposing a tax with respect to source B merchandise only and omitting source C merchandise from its coverage, it may be said that the Compensating Tax Law discriminates between source B and source C. Such discrimination does not present a commerce clause problem because the discrimination is within interstate commerce itself and does not hamper such commerce. If a tax with respect to source B merchandise is otherwise valid under the commerce clause, the omission of source C merchandise does not render the tax invalid. As stated in *Hart Refineries* v. *Harmon,* 278 U.S. 499, 501, where interstate transportation has ended, "the taxing power of the state in respect of the commodity which was the subject of such transportation, may, so far as the commerce clause of the federal Constitution is concerned, be exerted in any way which the state's constitution and laws permit, provided, of course, it does not discriminate against the commodity because of its origin in another state."

The omission of source C merchandise from the coverage of the Compensating Tax Law, while not presenting a commerce clause problem, may raise a question of due process and equal protection of law. Even if such a question is raised, the difference in the treatment of source B merchandise from source C merchandise may be justified on the ground of proper classification. There is an advantage in doing business through representatives with offices in the Territory over doing business without resident representatives or through representatives whose functions are purely promotional. The statement made by Professor Powell in analyzing

*McGoldrick* v. *Felt & Tarrant Manufacturing Co.,* 309 U.S. 70, where an extrastate manufacturer carried on business through a resident representative, and *McLeod* v. *Dilworth Co., supra,* where an extrastate merchant did business through nonresident traveling salesmen, is pertinent. It is as follows:

> "* * * Although the New York headquarters and activities availed of by these vendors were not their own but those of another, these exclusive agents amounted to an alter ego who, except possibly for some difference in methods of compensation and control, did exactly what the vendor might do through its own hired men. Obviously it would open the door to easy devices for tax avoidance if slight shifts in the contractual arrangements between solicitors and vendors could make a difference. The substantial thing was the advantage of established headquarters and a resident staff to which buyers might go. * * *

> "Such a difference is not purely formal. It has something of practical substance in business fact. Whether it should turn the course of decision is a matter of judgment, but it cannot be denied that the use of real estate adds something to the use of migratory men. A stockroom where samples can be seen, where models can be tested, and where complaints and inquiries can be made puts the technical nonresident vendor in a business situation which differs from that of the local merchant in little else than in some delay in delivery of what is ordered." (Thomas Reed Powell, "Sales and Use Taxes: Collection from Absentee Vendors," 57 *Harvard Law Review,* 1086, 1090.)

Taxpayer says that the Compensating Tax Law, in imposing a tax only with respect to merchandise purchased by local retailers from extrastate sellers *through the activities of representatives,* is invalid under the long line of "drummer" cases beginning with *Robbins* v. *Shelby County Taxing District,* 120 U.S. 489 (1887), and continuing through *West Point Wholesale Grocery Co.* v. *Opelika,* 354 U.S. 390 (1957).

The principle established by the drummer cases is that a local taxing jurisdiction may not impose a flat sum license tax upon per-

sons who solicit orders for extrastate sellers who subsequently fill the orders by interstate transportation. Those cases are not apposite here. They involved taxes upon drummers. The tax here in question is upon purchases. The Territory imposes a tax upon representatives under R.L.H. 1955, § 117-14(e), a section of the General Excise Tax Law. We are not now concerned with the validity of that provision.

It is argued that, although the Compensating Tax Law imposes a tax that is equated to the excise tax on wholesalers, it in fact requires source B merchandise to carry a heavier burden than is borne by source A merchandise in that the tax is in addition to the excise tax on representatives. Such argument assumes that the excise tax on representatives is passed on to local retailers by being included in the prices charged by extrastate sellers to the retailers and that the tax, as thus passed on, causes a price differential that affects the free flow of interstate commerce. There is no basis for such assumption in the record. "Prohibitory discriminatory burdens on interstate commerce are not to be determined by abstractions. Particular facts of specific cases determine whether a given tax prohibitively discriminates against interstate commerce." (*Nelson* v. *Sears, Roebuck & Co.,* 312 U.S. 359, 366.)

The nature of the tax that a law imposes is not determined by the label given to it but by its operating incidence. (*Wisconsin* v. *J. C. Penney Co.,* 311 U.S. 435.) Taxpayer argues that the tax imposed by the Compensating Tax Law, although labeled a tax on use, is not a tax on any local incident after interstate commerce is at an end, but is actually a tax upon purchases made in interstate commerce, proscribed by *McLeod* v. *Dilworth Co., supra.*

*McLeod* v. *Dilworth Co.* involved an Arkansas law which read as follows: "Every person, as defined in this act, shall report to the Commissioner *as a retail sale* the use or consumption by him of anything on which the sales tax has not been paid under this Act which would have been levied had it been sold at retail in this State, and shall *pay the sales tax* thereon." (Emphasis supplied.) It affirmed a judgment of the Supreme Court of Arkansas that the law as applied to Tennessee corporations upon sales made to Arkansas purchasers violated the commerce clause, where the Tennessee corporations were not qualified to do business in Arkan-

sas, had no offices in that State, and delivered merchandise to common carriers in Tennessee for transportation to Arkansas in fulfillment of orders solicited by traveling salesmen who were domiciled in Tennessee. (*McLeod* v. *Dilworth Co.*, 205 Ark. 780, 171 S. W. [2d] 62.) The judgment of the state court was based upon a prior holding in *Mann* v. *McCarroll*, 198 Ark. 628, 130 S. W. (2d) 721, that the law imposed a sales tax and not a use tax. The specific holding of the Supreme Court of the United States in the case is that the Arkansas law, definitely construed by the state court as imposing a sales tax and not a use tax, did not apply to nonresident Tennessee corporations for sales consummated in Tennessee because "for Arkansas to impose a tax on such transaction would be to project its powers beyond its boundaries and to tax an interstate transaction." (*McLeod* v. *Dilworth Co., supra,* 330.)

The tax in question in *McLeod* v. *Dilworth Co.* was labeled a sales tax and was held to be a sales tax. It was imposed upon sellers. The tax under the Compensating Tax Law is not imposed on sellers. It is imposed on purchasers, but not on the act of purchasing. It is imposed on a local incident of ownership after the purchases have been completed and after the interstate transportation of the purchased goods is at an end. It is denominated a use tax. It may not be as broad and comprehensive in its application as a use tax on consumers. Still, it is a tax on a taxable local incident.

*Bacon & Sons* v. *Martin*, 305 U.S. 380, involved the validity of a Kentucky statute which imposed a tax on "the receipt of cosmetics in the State by any Kentucky retailer," as applied to articles purchased from manufacturers and dealers in other states and transported to retailers in Kentucky. Just as taxpayer here contends that the tax imposed by the Compensating Tax Law is upon the act of purchasing, so in that case the taxpayer contended that the tax imposed by the Kentucky law was on "the act of receiving" and hence a direct burden on interstate commerce. The state court denied the contention and held that the tax was imposed upon the sale and use of cosmetics after their receipt by the retailers, not on the act of receiving them. It stated: "When we apply the intended and correct meaning of the word 'receipt' as used in the

act, it is conclusive to our minds that the tax of the retailer, referred to, is paid when the articles are in his possession and when the merchant has unlimited control and dominion over the cosmetics." (*Martin* v. *Bacon & Sons,* 268 Ky. 612, 105 S.W. [2d] 569.) The Supreme Court of the United States dismissed the appeal from the state court for want of a substantial federal question. It was of the opinion that the state court correctly applied the principle established in *Gregg Dyeing Co.* v. *Query, Nashville, C. & St. L. Ry. Co.* v. *Wallace, Edelman* v. *Boeing Air Transport, Inc.,* and *Monamotor Oil Co.* v. *Johnson,* all cases previously cited in this opinion.

One final contention remains to be considered. It is that the Compensating Tax Law exposes interstate commerce to the risk of multiple state tax burdens. The principle that a law exposing interstate commerce to multiple state tax burdens violates the commerce clause first appeared as a dictum in *Western Live Stock* v. *Bureau, supra,* 256. The principle has been applied in cases involving the possibility of multiple taxation of the same taxable event by. different states. (*Adams Manufacturing Co.* v. *Storen,* 304 U.S. 307; *Gwin, White & Prince, Inc.* v. *Henneford,* 305 U.S. 434.) Our attention has not been called, and we are not aware of any case where the principle has been applied to a case involving the risk of multiple taxation of different taxable events with respect to the same property in a succession of states in which the property may be present. In *Western Live Stock* v. *Bureau, supra,* a case involving a state tax on the privilege of doing magazine publishing business measured by advertising income, as applied to. a publisher deriving a portion of income from extrastate advertisers, the court did not apply the principle, stating: "The tax is not one which in form or substance can be repeated by other states in such manner as to lay an added burden on the interstate distribution of the magazine." In *Coverdale* v. *Pipe Line Co.,* 303 U.S. 604, the court sustained a state tax on the production of mechanical power, as applied to an engine used to supply such power to a compressor which increased the pressure of natural gas transported in a pipe line to purchasers in other states, because the "tax is without discrimination in form or application as between inter- and intra-state commerce and it cannot be imposed

by more than one state." What has been said in *Western Live Stock* v. *Bureau* and *Coverdale* v. *Pipe Line Co.* may be stated here. The Compensating Tax Law imposes a tax on a local incident with respect to property which is not subject to repetition in other states.

Referring to *Adams Manufacturing Co.* v. *Storen* and *Gwin, White & Prince, Inc.* v. *Henneford,* the Supreme Court of the United States stated in *Southern Pacific Co.* v. *Gallagher, supra,* 174: "Where a similar levy by other states may be imposed, with consequent multiplicity of exaction in commerce for the *same taxable event,* local tax of a privilege, measured by total gross receipts from interstate transactions, is considered identical with an exaction on the commerce itself." (Emphasis supplied.) In connection with that statement, Judge Traynor of the California Supreme Court observed: "The 'cumulative burdens' rule would thus seem to be applicable only to cases where one taxable event is exposed to the taxing power of more than one state, and therefore inapplicable to a taxable event isolated from interstate commerce removed from the taxing power of more than one state." (Roger John Traynor, "State Taxation and the Commerce Clause in the Supreme Court, 1938 Term," 28 *California Law Review,* 168, 183.)

Taxpayer's appeals in Cases Nos. 4040 and 4041 are denied and the assessments appealed from are affirmed.

*Frank D. Padgett (Robertson, Castle & Anthony* with him on the briefs) for Taxpayer Stewarts' Pharmacies, Ltd.

*Rhoda V. Lewis,* Deputy Attorney General, Territory of Hawaii (also on the brief), for Tax Commissioner Earl W. Fase.