LASSER, P.J.T.C.
Daniel N. Falcone, trading as Hilltop Sales & Service, (Falcone) contests a certificate of debt entered as a judgment on September 6, 1989 in connection with a deficiency tax assessment in the amount of $140,452.98 including penalty and interest imposed by the Director, Division of Taxation (Director) pursuant to the New Jersey Sales and Use Tax Act (the act), N.J.S.A. 54:32B-1 et seq., on sales made by Falcone, a Pennsylvania garden equipment and recreational vehicle dealer, to New Jersey residents and delivered to New Jersey in a Falcone truck. The sales occurred between January 1, 1985 and July 31, 1988. At issue is whether sufficient nexus exists to require Falcone to collect sales tax on these sales.
Falcone amended his complaint to add as third-party defendants those customers to whom delivery of purchases was made in New Jersey. A number of these defendants have paid the tax to Falcone, who has turned the payments over to the Director, thus reducing the deficiency assessment. Seventeen *77 third-party defendants did not appear, and defaults were entered against them.
I.
The following facts were presented at trial. The business, a sole proprietorship, was started in 1972. Falcone is engaged in the business of selling and repairing garden and lawn machinery and equipment as well as recreational vehicles. Falcone is a John Deere Co. dealer, and his sales include tractors, mowers and associated parts. The employees include Mrs. Falcone, the Falcones’ son, a bookkeeper and a delivery person.
Falcone’s business is located in Washington Township, Pennsylvania, approximately five miles from the Delaware River Belvidere Bridge to New Jersey, and 11 miles from the Portland Bridge to New Jersey. Falcone’s residence and the building in which the business is operated are at the same location. All inventory is stored in Pennsylvania.
Falcone does not own nor lease any property in New Jersey, and has no office in New Jersey. He neither employs nor owns any capital in New Jersey, and has no employees who work in New Jersey other than to make deliveries in his truck to customers in New Jersey. He has no New Jersey telephone number or mailing address and maintains no bank accounts or records in New Jersey. He has no billboards or signs in New Jersey. No solicitation of business takes place in New Jersey.
Falcone does not direct any advertising to New Jersey customers. Falcone does not engage in telephone solicitation, does not send mailers to New Jersey and does not advertise in New Jersey newspapers. He does not conduct a mail-order business, although one out of 100 customers orders by telephone. Local Pennsylvania daily and weekly newspapers carry Falcone’s advertisement, which includes a map showing routes to the business, but no routes from New Jersey locations are shown.
John Deere Co. provided Falcone with a list of yellow-page directories carrying the John Deere Co. listing, from which Falcone selected the directories to carry his telephone number. *78 Only directories distributed in Pennsylvania were selected. The John Deere Co. advertises on a Pennsylvania television station, listing Hilltop Sales and Service among those who are John Deere Co. dealers.
Falcone made sales to New Jersey residents who came to his place of business in Pennsylvania. All invoices were written in Pennsylvania. The person making the sale prepared delivery directions, which then were attached to the invoice. Delivery was made in Falcone’s truck at no charge to the customer. The truck bore the Hilltop Sales & Service name. On occasion, equipment requiring maintenance was picked up at the customer’s New Jersey address and brought to Falcone’s place of business in Pennsylvania for service. Payment was made in Pennsylvania at Falcone’s place of business or was financed through Pennsylvania banks. If a customer defaulted in payment, the equipment was picked up in Falcone’s truck at the customer’s New Jersey address and brought back to Falcone’s place of business in Pennsylvania. No use was made of New Jersey enforcement processes.
Falcone did not collect Pennsylvania or New Jersey sales or use tax from his New Jersey customers, but stamped their invoices “tax unpaid del. to New Jersey.” Customers were expected to sign the invoice containing this wording.
It was stipulated by the parties that during the period February 19,1985 through July 26,1988 Falcone made approximately 310 deliveries to New Jersey addresses, of which approximately 300 were made in Falcone’s truck. Approximately 30 of such deliveries included providing operating instructions to the customer for the equipment. Approximately 10 to 15 deliveries included installation or set-up of the equipment, and approximately- 5 to 10 deliveries involved repair or service to the equipment.
Falcone’s bookkeeper testified that, from January 1, 1985 through July 31, 1988, Pennsylvania sales tax was collected on 12,300 sales to Pennsylvania customers and was not collected *79 on 500 sales to New Jersey customers. She could not definitely testify that all these sales were delivered to New Jersey.
After audit by Pennsylvania, the New Jersey Division of Taxation was notified that Falcone had made sales to New Jersey residents for which no Pennsylvania sales tax was paid. As a result, the New Jersey Division of Taxation conducted an audit of Falcone’s sales.
The Director’s expert, an auditor for the Division of Taxation, testified that 571 invoices of sales to New Jersey residents were audited. Affidavits were requested from the customers named in invoices which exceeded $5,000. Affidavits were received by the Division from 489 customers. Of these, 348[1] indicated that deliveries were made in the Falcone truck. There were 142 out-of-Pennsylvania sales to non-New Jersey residents, but the invoices for these sales also state "tax unpaid del. to New Jersey.”
During the three-and-one-half-year period in issue, sales to New Jersey customers amounted to approximately 2.4% to 3.9% of all of Falcone’s transactions [2] and approximately 22% of Falcone’s sales by dollar volume.[3]
One customer, a resident of Somerset County, New Jersey, testified that he learned of Falcone from another Pennsylvania John Deere Co. dealer and had been doing business with Falcone since 1978, having purchased a snowmobile, a lawn mower, a space heater and a lawn and garden tractor. He further testified that all invoices pertaining to his purchases which were the subject of the Director’s audit contained the *80 “tax unpaid del. to New Jersey” wording, that Falcone’s son had delivered all purchases to him in New Jersey and that he was told by Falcone or his employees that it was the customer’s responsibility to remit use tax to the State of New Jersey. This witness stated that, after he received a written questionnaire from the Division, he called the Division and offered to pay the applicable tax, but that this offer was refused by the Division and he was informed that payment would be sought from Falcone.
In an April 7, 1989 letter to Falcone, the Director stated that the investigation was concluded and it was determined that, pursuant to N.J.S.A. 54:32B-2(i) and (w), Falcone was subject to the act. After several notices were sent to Falcone, a certificate of debt was entered as a judgment on September 6, 1989. On September 13, 1989, a complaint was filed with the Tax Court contesting the certificate of debt and the obligation to collect New Jersey tax.
Initially, it was unclear whether the Director contended that Falcone was required to collect a use tax or a sales tax. A deficiency notice of May 14, 1989 stated that the deficiency assessment was for sales tax, and cited § 3 of the act (which imposes the sales tax). However, a demand-for-payment letter of June 13, 1989 stated that Falcone had failed to collect use tax. The Director’s answer to the complaint indicates that the collection of use tax is in issue. The Director’s answer to the amended complaint states that both sales and use tax obligations are in issue. At trial and in its motion for reconsideration, the State conceded that N.J.S.A. 54:32B-2(i) precludes the Director from requiring Falcone to collect use tax. The Director stated that the State was relying on N.J.S.A. 54:32B-2(f), which imposes a sales tax on the transfer of possession of personal property within New Jersey, to require Falcone to collect sales tax because delivery to his customers in New Jersey constituted taxable New Jersey sales.
Falcone contends that there is insufficient nexus for New Jersey to impose on him the duty to collect a sales tax.
*81 II.
A state’s power to tax an out-of-state vendor, or to impose a sales tax collection obligation upon him, is limited by the Due Process and Commerce Clauses of the United States Constitution.
The United States Supreme Court has found that the Commerce Clause prohibits, inter alia, states from enacting taxes that discriminate against interstate commerce. Complete Auto Transit v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). This Commerce Clause prohibition applies principally to discrimination between out-of-state and in-state vendors with less emphasis on the burden state taxation may place upon interstate commerce. See, e.g., Commonwealth Edison Co. v. Montana, 453 U.S. 609, 101 S.Ct. 2946, 69 L.Ed.2d 884, reh’g den. 453 U.S. 927, 102 S.Ct. 889, 69 L.Ed.2d 1023 (1981); Maryland v. Louisiana, 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). The subject case does not involve discrimination against out-of-state vendors. The obligation to collect sales tax is imposed equally upon in-state and out-of-state vendors. I find that the obligation to collect sales tax for goods delivered to New Jersey customers does not rise to an impermissible burden on interstate commerce not fairly related to services provided by the state so as to implicate the Commerce Clause. Complete Auto Transit v. Brady, supra.
Under the Due Process Clause, a state may not impose a tax or a tax collection obligation on an out-of-state vendor unless there is “some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax.” Miller Bros. v. Maryland, 347 U.S. 340, 345, 74 S.Ct. 535, 539, 98 L.Ed. 744, 748, reh’g den. 347 U.S. 964, 74 S.Ct. 708, 98 L.Ed. 1106 (1954). An alternative characterization of this requirement is that the “simple but controlling question is whether the state has given anything for which it can ask return.” National Bellas Hess, Inc. v. Department of Revenue, 386 U.S. 753, 756, 87 S.Ct. 1389, 1391, 18 L.Ed.2d 505, 508-509 (1967), quoting Wisconsin v. J.C. Penney Co., 311 U.S. 435, 444, 61 S.Ct. 246, 250, 85 L.Ed. 267 (1940).
*82 This court has expressed the view that, when a state seeks to exercise its taxing power, due process requires more than taxpayer’s “economic presence here or the taking advantage of New Jersey’s economic milieu to sustain the tax at issue. It appears that, in addition, there must be a degree of physical presence. See, e.g., National Geographic v. Cal. Equalization Bd., 430 U.S. 551, 560, n. 6, 97 S.Ct. 1386, 1392, n. 6, 51 L.Ed.2d 631 (1977).” Chemical Realty Corp. v. Director, Div. of Taxation, 5 N.J.Tax 581, 612 (Tax Ct.1983), aff’d o. b. per curiam 6 N.J.Tax 448 (App.Div.1984). This conclusion is consistent with decisions of the United States Supreme Court and courts of other states.[4] Sufficient nexus has been found where the vendor uses or employs agents in the taxing state. See Tyler Pipe Inds. v. Department of Rev., 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987); Scripto, Inc. v. Carson, 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660 (1960); General Trading Co. v. State Tax Commission, 322 U.S. 335, 64 S.Ct. 1028, 88 L.Ed. 1309 (1944); Felt & Tarrant Mfg. Co. v. Gallagher, 306 U.S. 62, 59 S.Ct. 376, 83 L.Ed. 488 (1939); Avco Financial Services v. Director, Div. of Taxation, 100 N.J. 27, 494 A.2d 788 (1985) (involving corporation income tax). See also Illinois Commercial Men’s Association v. State Board of Equalization, 34 Cal.3d 839, 671 P.2d 349, 196 Cal.Rptr. 198 (1983); *83 Allemed, Inc. v. Department of Revenue, 101 Ill.App.3d 746, 57 Ill.Dec. 164, 428 N.E.2d 714 (App.Ct.1981); Calvert v. American International Television, Inc., 491 S.W.2d 455 (Tex.Civ.App.1973). Nexus has also been found where the vendor maintains an office or other property in the taxing state. D.H. Holmes, Ltd. v. McNamara, 486 U.S. 24, 108 S.Ct. 1619, 100 L.Ed.2d 21 (1988); National Geographic v. Cal. Equalization Bd., 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977); Nelson v. Sears, Roebuck & Co., 312 U.S. 359, 61 S.Ct. 586, 85 L.Ed. 888 (1941); Nelson v. Montgomery Ward & Co., 312 U.S. 373, 61 S.Ct. 593, 85 L.Ed. 897 (1941); AAMCO Transmissions v. Taxation and Revenue Dept., 93 N.M. 389, 600 P.2d 841 (App.Ct.1979); Aldens, Inc. v. Tully, 49 N.Y.2d 525, 427 N.Y.S.2d 580, 404 N.E.2d 703 (1980).
Due process imposes greater limitations on a state’s taxing power than on the exercise of other sovereign powers such as the exercise of long-arm jurisdiction or the enforcement of regulations designed to protect the state’s citizenry. Aldens, Inc. v. Packel, 524 F.2d 38, 42-45 (3 Cir.1975). The Third Circuit has described why due process considerations are different in the context of a tax collection obligation:
Tax cases of necessity come in for special due process scrutiny. No State interest rates so high in the state scale of values as the state’s sovereign fisc. At the same time no extraterritorial manifestation of sovereignty, except possibly arrest, is quite so offensive to common notions of its territorial limits. Thus, extraterritorial impositions of tax collection obligations have been upheld only when it can be said that a benefit has been conferred on the tax collector by virtue of the state’s sovereignty, and the tax is related to that benefit. [Aldens, Inc. v. Packel, supra, 524 F.2d at 43-44].
The issue thus is whether the Sales and Use Tax Act as applied in the subject case violates constitutional due process requirements and, in particular, whether sufficient nexus exists as to these transactions to impose on Falcone the obligation to collect sales tax.
III.
To determine whether nexus exists, “there is no litmus test that will resolve the issue for all cases.” Avco Financial Services v. Director, Div. of Taxation, supra, 100 N.J. at 37, *84 494 A.2d 788. The significant fact here is that Falcone delivered goods to customers in New Jersey in his own truck. This fact distinguishes this case from those in which the out-of-state vendor delivers merchandise to a common carrier in the vendor’s state. See, e.g., Bellas Hess, supra.
Director argues that delivery of goods in New Jersey by this out-of-state vendor is a transfer of possession of tangible personal property in this State. Under N.J.S.A. 54:32B-2(e), (i) and -2(f), the transfer of possession constitutes a retail sale for which the seller must collect a sales tax. To be sure, delivery is only one aspect of the entire sales transaction. Customers traveled to Falcone’s store in Pennsylvania and ordered and paid for merchandise there. However, an important incident of sale, the transfer of possession and title, occurred in New Jersey and required Falcone’s physical presence in this State, the use of New Jersey roads, the reliance on police protection and other similar state and local services.
This court has held that, for purposes of taxation, a sale is consummated upon delivery of goods in this State where title passes concurrently to the vendee with delivery. Media Graphics, Inc. v. Director, 7 N.J.Tax 23, 29-30 (Tax Ct.1984), aff’d 8 N.J.Tax 321 (App.Div.1986). In Media Graphics, the taxpayer, a New Jersey printer and mail-order service, both produced and mailed printed material by common carrier to addresses of its out-of-state customers. Id., 7 N.J.Tax at 25-26. While Media Graphics argued that a taxable sale should occur only upon delivery of printed materials to its out-of-state customers, relying in part on the Uniform Commercial Code, the court found that performance of the contract was completed in this State and that delivery to Media Graphic’s customers effectively occurred at the time the printer delivered the processed mail to the United States Post Office in New Jersey. Id. at 29-30.
Falcone argues that the decision of the United States Supreme Court in Miller Bros. v. Maryland, supra, holds that delivery by an out-of-state vendor in its own truck to its customers in another state is not sufficient nexus for the *85 purpose of imposing an obligation on the vendor to collect tax on the transaction.
In Miller Brothers, the out-of-state vendor operated a single retail household furniture store in Delaware near the Maryland border. It advertised in Delaware media which reached Maryland, and mailed circulars to all its customers. Maryland residents would travel to the Miller Brothers store to buy furniture. The case involved three types of purchases by Maryland customers: purchases (1) carried away from the store by purchasers; or (2) delivered by Miller Brothers in Delaware to a common carrier for delivery by the common carrier to the Maryland purchasers; or (3) delivered to Miller Brothers customers in Miller Brothers trucks. On due process grounds, the Court struck down Maryland’s imposition of a use tax collection duty on all three types of Miller Brothers sales.
The obligation of an out-of-state vendor to collect a sales tax was not in issue in Miller Brothers. The gratuitous statement of the Court that “Maryland could not have reached this Delaware vendor with a sales tax on these sales” does not speak to an issue in the case and is not supported by the Court’s citation of McLeod v. Dilworth.[5] 347 U.S. at 346-47, 74 S.Ct. at 539-40, 98 L.Ed. at 749.
I conclude that the decision in Miller Brothers is not binding on this court primarily because the issue there was collection of a Maryland use tax while the issue here is collection of New Jersey sales tax.
Although the Miller Brothers facts appear similar, certain factual differences exist between that case and the matter *86 before this court.[6] Further, at the time Miller Brothers was decided in 1954, sales and use taxes were “a relatively new and experimental form of taxation.” Id. at 343, 74 S.Ct. at 538, 98 L.Ed. at 747. Since 1954, vendors have become more sophisticated concerning sales tax, and advances in accounting technology have eased the collection burden. This trend has been reflected in state and federal case law which is gradually eroding the holdings of cases such as Miller Brothers. See Good’s Furniture v. Iowa State Bd. of Tax, 382 N.W.2d 145, 149 (Iowa), reh’g den. 479 U.S. 817, 107 S.Ct. 76, 93 L.Ed.2d 32 (1986).
The dissent in Miller Brothers looked to the practical and economic aspects of the situation, rather than to legalistic notions of jurisdiction, to argue that the out-of-state vendor should have been subjected to Maryland’s taxing power. The dissent emphasized the minimal burden on the vendor to add tax to those purchases delivered into Maryland, the absence of surprise, and the recurring nature of the in-state activities.
Falcone was well aware of the requirements of the New Jersey Sales and Use Tax Act and relied on delivery to New Jersey to avoid collecting the Pennsylvania sales tax. His out-of-state customers appear to be principally from New Jersey. Thus, collection of New Jersey sales tax is not a substantial burden upon Falcone because he knows the destination of deliveries at the time of sale, has a physical presence in New Jersey through frequent deliveries in New Jersey, and relatively inexpensive technology now exists to facilitate the bookkeeping necessary to collect and remit the tax.
I find that the facts of this case provide sufficient transactional nexus to overcome due process objections and that the *87 imposition of an obligation on Falcone to collect sales tax on New Jersey transactions is neither discrimination against interstate commerce nor a burden on interstate commerce.
I conclude that constitutional due process and commerce clause requirements are not violated by N.J.S.A. 54:32B-2(f), which imposes a sales tax on the transfer of possession of tangible personal property in New Jersey, and transactional nexus exists for sales delivered by Falcone to customers in New Jersey.
The Clerk of the Tax Court is directed to enter judgment in favor of the Director against Falcone, affirming the validity of the subject certificate of debt. The matter will proceed as to the third-party defendants.

This figure is at variance with the stipulation of the parties, but the difference is not deemed to be significant.

Based on 12,300 Pennsylvania sales, 500 New Jersey sales and 142 sales attributable to other states, New Jersey sales amounted to 3.9% of the total for the period in issue. Using 310 New Jersey sales, the New Jersey sales amounted to 2.4% of the total.

The Director’s expert testified that for the period in issue there were $1.4 million in-New Jersey sales and $5.1 million in-Pennsylvania sales.

 But see State By Heitkamp v. Quill Corp., 470 N.W.2d 203 (N.D.), cert. granted —U.S.-, 112 S.Ct. 49, 116 L.Ed.2d 27 (1991); SFA Folio Collections, Inc., No. 89-3015-III, March 11, 1991 (Tenn.Ch. 20th Dist.); Bloomingdale’s by Mail, Ltd., No. 89-3017-II, March 8, 1991 (Tenn.Ch. 20th Dist.). These cases involved substantial catalog sales into the respective taxing states, and the courts relied in large measure on the environmental impact on the state of disposing of substantial volumes of discarded catalogs. These cases specifically held that physical presence is not a requirement of due process, and are directly in conflict with Bellas Hess, infra, and recent holdings in Connecticut and Pennsylvania. See, e.g., SFA Folio Collections, Inc. v. Bannon, 217 Conn. 220, 585 A.2d 666 (1991); Bloomingdale's by Mail, Ltd. v. Pennsylvania Department of Revenue, 130 Pa.Cmwlth. 190, 567 A.2d 773 (1989). This court need not determine where New Jersey stands on this issue as the case at hand does not involve the significant economic penetration of the New Jersey market by the mail order industry or the accompanying environmental burden of a substantial volume of discarded paper.

In McLeod v. Dilworth, the Court held that Arkansas was not permitted to impose its sales tax upon goods delivered from Tennessee where sales were “consummated" in Tennessee. 322 U.S. 327, 328, 64 S.Ct. 1023, 1024, 88 L.Ed. 1304, 1305 (1944). Although purchase orders were solicited by traveling salesmen in Arkansas, all orders were subsequently approved, processed and delivered by Dilworth to common carriers in Tennessee. Unlike the facts in Miller Brothers, since transfer of title and possession was completed in Tennessee, there was no constitutional basis upon which Arkansas could rely to impose its state sales tax.

In Miller Brothers, the Court found that imposition of a use tax collection obligation upon Miller Brothers would be an administrative hardship because the vendor could not know the destination of all of its sales to out-of-state customers. Id. at 344, 74 S.Ct. at 538, 98 L.Ed. at 748. In the subject case, Falcone knows the destination of goods he sells to out-of-state purchasers who require delivery to New Jersey because delivery arrangements are made at the time of sale. In addition, it is difficult to characterize Falcone’s New Jersey deliveries as "occasional," as did the Court in Miller Brothers.