SMALL, P.J.T.C.
This matter requires the court to consider the immunity from state income taxation provided by Section 101(a) of Public Law 86-272,15 U.S.C.A. § 381 (“P.L. 86-272”), which generally prohibits states from imposing an income tax on businesses whose only contact with the state is the solicitation of orders of tangible personal property.
Plaintiff, Chester A. Asher, Inc. (“Asher”), challenges the Final Determination of the Director, Division of Taxation (the “Director”), declaring Asher to be subject to tax under the New Jersey Corporation Business Tax Act, N.J.S.A. 54:10A-1 to -41, and directing Asher to file apportioned Corporation Business Tax (“CBT”) returns beginning October 1,1996 through September 30, 2001. (Plaintiff reported its income on a fiscal year basis, October *584 1 to September 30). A pretrial order limited this matter to 1999, 2000, and 2001.
I.
Asher is a Pennsylvania corporation with its primary place of business in Souderton, Pennsylvania and is in the business of the manufacture and sale of candy and confections. It has been incorporated in the State of Pennsylvania since 1964 and received a certificate of authority to conduct business in New Jersey in February 1998.
During the tax years 1999, 2000 and 2001, it is undisputed that Asher did not lease or own any real property in New Jersey. However, Asher was doing business in New Jersey. For the tax year ending September 30, 1999, plaintiff had gross sales to New Jersey customers totaling $2,650,853.35. For the following year, plaintiff had gross sales to New Jersey customers totaling $2,746,190.91. For tax year ending September 30, 2001, plaintiffs gross sales totaled $2,679,591.29. For these three years, gross sales to New Jersey customers totaled $8,076,635.55.
A. Salesmen
During this period, plaintiff regularly solicited business in New Jersey. Plaintiff employed two salespersons to solicit New Jersey customers. The salespersons were equipped with samples, brochures, price lists, and catalogs. The salespersons would visit plaintiffs customers in New Jersey and if the customers had an order, the order would be written up and faxed to plaintiffs Pennsylvania headquarters. The salespersons would also talk to the customers about new products; however, they did not have final authorization to resolve customer complaints.
Asher also retained the services of Golden Sales Associates and Schnackenberg Associates to help generate business. At trial John Schnackenberg testified that he served as an independent broker for Asher for almost thirty years. Schnackenberg testified that he would solicit sales in New Jersey and would fax or phone the orders to the Souderton office. In addition, price lists were *585 mailed to Asher’s customers in New Jersey once a year and catalogs were mailed from time to time.
B. Delivery Drivers
Asher employed approximately eight delivery drivers to deliver some of the ordered candy to its New Jersey customers. Delivery drivers loaded their trucks at plaintiff’s Souderton facility and delivered the candy and confection products to customers in New Jersey. These deliveries were made in company trucks that advertised the “Asher” company logo. Asher would charge some of its customers a $5.00 fee per delivery.
Deliveries were conducted on a daily basis. Asher’s drivers also picked up damaged or returned goods from New Jersey customers as a matter of company policy. Company policy was that if a customer received an order that was more than originally ordered, the driver would take the excess cases back or if there was any damage en route to the customer, damaged boxes would be taken back. According to plaintiff’s job description for its delivery drivers, “[djrivers may be required to pick up customer returns.”
The number of boxes that were picked up by Asher’s employee drivers in New Jersey during the fiscal years ending September 30, 1999, 2000, and 2001 were forty-three (43), seventeen (17), and ninety-four (94), respectively. A total of 154 boxes were picked up over the three years. Charles A. Clark, Asher’s Vice President of Finance, testified that, during the same three fiscal years, approximately 102,000, 104,000 and 101,000 boxes were sold to New Jersey customers, respectively.
Throughout tax years 1999-2001, Asher also collected payments from New Jersey customers on delivery. There was testimony that Asher had a company policy to collect COD payments from certain New Jersey customers. The company policy was that if money was owed by the customer for prior sales, Asher would not leave the shipment with the customer unless a check was picked up in the amount of the past-due accounts. Although Asher insists that these were not “delinquent” accounts, the record is clear[1] that if these payments for prior deliveries were not made, the drivers were instructed not to deliver the candy that they had *586 on their trucks. Whether “delinquent” or “past-due,” it is clear that these collections were not payment for the deliveries made at that time, but for previous deliveries. Asher’s delivery drivers were aware of this policy. If a payment was made in cash, two of Asher’s drivers testified that they would count the money. Asher also provided some drivers with a locked pouch to hold collected money. At the end of the day when the driver returned to headquarters, these payments were given to the accounting department.
During the trial, Mr. Clark, after reading from interrogatories, confirmed that all eight of Asher’s drivers with routes in New Jersey collected payment on delivery. Mr. Clark also testified that plaintiff authorized United Parcel Service to accept payment on its behalf. He certified the following COD amounts had been picked up by drivers:
Tax Years Ending September 30 Asher’s Drivers UPS Total
1999 $109,458.41 $20,986.33 $130,444.74
2000 $ 75,050.31 $14,960.42 $ 90,010.73
2001 $ 31,128.88 $16,865.95 $ 47,994.83 [1]
Total $215,637.60 $52,812.70 $268,450.30
Asher’s drivers also testified that they picked up money fi’om Royal Enterprises (one of Asher’s largest distributors in New Jersey) in the amount of $28,748.29 and James Candy Company in the amount of $15,289.68. Mr. Clark testified that these amounts were not pure COD’s and therefore were not on the COD list that he had certified. He also testified that some drivers would collect an old balance when delivering a current shipment.
There is some question as to whether these COD numbers are accurate. For example, according to invoices submitted at trial, Asher’s drivers and UPS were instructed to pick up payments from New Jersey customers twenty-six (26) times in the month of *587 July 2001, totaling $52,768.43. This number is greater than the amount listed for the entire year of 2001 on plaintiffs COD list.
C. The Chocolate Shop Program
Asher also sold products to New Jersey customers through its “Chocolate Shop Program.” The “Chocolate Shop Program” provided customers with everything they needed to start their own chocolate business. The “Program” included refrigerated glass chocolate display cases, trays, boxes, gloves, bags, and Asher’s Easel sign. It is not clear whether Asher’s drivers ever picked up any of these products in New Jersey. One driver testified that he may have once picked up a refrigerator case from a location in Mount Holly, New Jersey, but he could not recall the precise details.
II.
On January 3, 2002, Penny Knowles, an investigator employed by the Division of Taxation, approached one of Asher’s trucks that was parked in Atlantic City, New Jersey, and interviewed the delivery driver of the track, Val Shukaitis. During the interview, Mr. Shukaitis affirmed that Asher picked-up and/or replaced damaged or returned property and picked up payment from New Jersey customers. As a result of that interview, Ms. Knowles issued a Warrant of Execution-Jeopardy Assessment on Charles A. Clark, Asher’s Vice President of Finance. Ms. Knowles advised Mr. Clark by telephone that unless $11,000 was wired to the Director, Asher’s track and its contents would not be released. On that same day Mr. Clark wired the funds and the truck was released to plaintiff’s driver.
The Director received Asher’s protest of the Jeopardy Assessment on April 3, 2002. Asher also filed minimum CBT returns for tax periods ending September 80, 1999, 2000 and 2001. For each of these returns, Mr. Clark completed a Nexus-Immune Activity Declaration. On all three forms, he checked “No” to the following question: “Did this corporation, during the period covered by this return, perform any of the following activities in New Jersey: (11) Picked up and/or replace damaged, returned or repossessed goods *588 from New Jersey customers with company owned vehicles or through contract earners?” This assertion appears contrary to subsequent testimony at trial.
On March 4, 2003, the Director issued a Final Determination upholding the Assessment. The Final Determination concluded that “Asher’s activities of picking up and replacement of damaged or returned goods and the collection of current and/or delinquent accounts in this state are non-immune activities and are not protected under P.L. 86-272.” The Director also concluded that these activities “exceed solicitation” and “serve an independent business function activity that does not facilitate the actual solicitation of orders.”
On May 30, 2003, Asher filed its complaint in this matter. The complaint was the subject of a full trial before this court followed by post-trial briefs. Asher argues that the delivery by its delivery drivers of its products to New Jersey customers does not result in the loss of immunity under P.L. 86-272 and that the pick-up of damaged or returned products and the collection of payments from New Jersey customers by its delivery drivers were ancillary to the solicitation of sales. In the alternative, Asher argues that even if its activities are not considered ancillary to solicitation of orders, the pick-up of the returns and the collection of payments were de minimis and therefore, within the scope of the immunity provided by P.L. 86-272.
III.
Asher does not argue that the tax imposed is either discriminatory or not fairly apportioned. It is well established that the apportionment scheme of the CBT, N.J.S.A. 54:10A-6, on its face, is a fairly apportioned, non-diseriminatory, and constitutional method for requiring foreign businesses “to pay them just share of the costs of the state government upon which they rely and by which they are furnished protection and benefits.” Ring-gold Coal Mining Co. v. Director, Div. of Taxation, 4 N.J.Tax 321, 327 (Tax 1982) (citing Roadway Express Inc. v. Director, Div. of Taxation, 50 N.J. 471, 236 A.2d 577 (1967), app. dism. 390 U.S. *589 745, 88 S.Ct. 1443, 20 L.Ed.2d 276 (1968)). See also Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977) (finding that a tax is not an undue burden on interstate commerce if it is fairly apportioned to local activities and non-diseriminatory in its application to interstate commerce.) Additionally, Asher does not argue that it is not “doing business” in New Jersey as defined under N.J.S.A. 54:10A-2.[2]
The sole issue before the court is whether Asher’s activities in New Jersey fall within the scope of the immunity provided by federal law P.L. 86-272, regarding the imposition of net income taxes. P.L. 86-272 provides, in pertinent part:
No State ... shall have power to impose ... a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:
(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and
(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1).
[ 15 U.S.C.A. 381(a). ]
A plain reading of this section indicates that, in order to enjoy the immunity provided by P.L. 86-272, the business activities within the State of New Jersey must: (1) consist of solicitation of orders; (2) for the sale of tangible personal property; (3) which orders must be sent outside of the State for approval or rejection; and (4) which must be filled by shipment or delivery from points outside the State. See Pomco Graphics v. Director, Div. of Taxation, 13 N.J.Tax 578, 584 (Tax 1993).
*590 In the present matter, there is no dispute that Asher sells tangible personal property. The Director argues that Asher lost its immunity from taxation because (1) its activities in New Jersey exceed the solicitation of orders; (2) the orders were not sent out of state for approval or rejection; and (3) all orders were not filled by shipment or delivery outside of the state. Of these three only the first, that Asher’s activities in New Jersey exceeded the solicitation of orders, has merit.
The record does not support the Director’s argument that orders were not sent out of state for approval. The testimony of the salespeople and Mr. Clark was simply that the orders they submitted to company headquarters in Pennsylvania were always accepted. The Director appeal's to argue that the salespeople were the ones really accepting the orders. However, such a conclusion is not supported by the record. Although, it appears that the salesperson’s orders were routinely accepted, they were still sent outside the State for formal approval in accordance with the statute.
Similarly, the contention that orders were shipped from places inside New Jersey is unsupported by the record. The Director argues that the display cases required for the Chocolate Shop Program were shipped from Mount Holly, New Jersey and therefore tax immunity was lost. However, the display cases are not the property of Asher but are manufactured and shipped by an agent, Display Concepts. In addition, the record does not support the Director’s contention that Asher’s drivers were picking up any of these products in New Jersey, although one driver might have done so on a single occasion.
The Director’s remaining argument is that Asher’s business activities in New Jersey exceeded the solicitation of orders as provided by P.L. 86-272. Prior to the United States Supreme Court decision in Wisconsin Dept. of Revenue v. William Wrigley, 505 U.S. 214, 112 S.Ct 2447, 120 L.Ed.2d 174 (1992), there was no definitive guidance concerning what business activities fell outside the scope of solicitation of orders and thus were not immune from taxation under P.L. 86-272. There were only varying interpreta *591 tions of several state and federal courts. See Chattanooga Glass Co. v. Strickland, 244 Ga. 603, 261 S.E.2d 599, 601 (1979) (reviewing various state and federal court decisions and noting the lack of uniformity and observing that three distinct definitions of solicitation of orders had been adopted).
Prior to Wrigley, supra, New Jersey had considered the meaning of solicitation of orders on a number of occasions with consistent results. The leading case, Clairol v. Kingsley, 109 N.J.Super. 22, 262 A.2d 213 (App.Div.), aff'd 57 N.J. 199, 270 A.2d 702 (1970), appeal dismissed 402 U.S. 902, 91 S.Ct. 1377, 28 L.Ed.2d 643 (1971) (finding that representatives of a hair products manufacturer visiting customers in New Jersey, rearranging displays, and teaching customers how to use its products was beyond solicitation) was followed by Mark Andy, Inc. v. Director, Div. of Taxation, 8 N.J.Tax 593 (Tax 1986) (finding that salesmen who received supplies, offered technical assistance, and followed up on delinquent payments was beyond solicitation); Ringgold Coal Mining Co., 4 N.J.Tax 321, supra (finding that the encouragement of payment of delinquent bills and handling of customer complaints by a salesman in New Jersey was beyond solicitation); Glick Studios, Inc. v. Director, Div. of Taxation, 2 N.J.Tax 365 (Tax 1981) (finding that the taking of photographs and accepting payments in New Jersey was beyond solicitation of orders); and Tamko Asphalt Products, Inc. of Maryland v. Director, Div. of Taxation, 5 N.J.Tax 446 (Tax 1983) (finding that salesmen who serviced customer accounts by investigating, reporting, and adjusting customer complaints had engaged in activities beyond solicitation).
The United States Supreme Court discussed the history of P.L. 86-272 in Heublein, Inc. v. South Carolina Tax Commission, 409 U.S. 275, 93 S.Ct. 483, 34 L.Ed.2d 472 (1972), and again in Wrigley, supra. The enactment of P.L. 86-272 was a response to three specific court decisions: Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959), International Shoe Co. v. Fontenot, 236 La. 279, 107 So.2d 640 (1958), certif denied, 359 U.S. 984, 79 S.Ct. 943, 3 L.Ed.2d 933 (1959), and Brown-Forman Distillers Corp. v. Collector of Reve *592 nue, 234 La. 651, 101 So.2d 70 (1958), appeal dismissed, 359 U.S. 28, 79 S.Ct. 602, 3 L.Ed.2d 625 (1959). These three decisions departed from the then prevailing rule that solicitation in interstate commerce was protected from taxation in the State where the solicitation took place. Norton Co. v. Department of Revenue of Ill., 340 U.S. 534, 71 S.Ct. 377, 95 L.Ed. 517 (1951). In Norton, the Court held that:
Where a corporation chooses to stay at home in all respects except to send abroad advertising or drummers to solicit orders which are sent directly to the home office for acceptance, filling, and delivery back to the buyer, it is obvious that the State of the buyer has no local grip on the seller. Unless some local incident occurs sufficient to bring the transaction within its taxing power, the vendor is not taxable.
[Id. at 537, 71 S.Ct. at 380, 95 L.Ed. at 520.]
This previously established rule became unsettled by the decision in Northwestern, supra, as well as by the Court’s denial of certiorari in International Shoe, supra, and the dismissal of the appeal in Broum-Forman, supra. With these decisions, the Court seemingly adopted broad language that suggested that a company whose only contacts with a state consisted of sending salesmen into that state could lawfully be subjected to income taxation. Wrigley, supra, 505 U.S. at 221, 112 S.Ct. at 2452-53, 120 L.Ed.2d at 184. Within three months after these cases were decided in 1959, Congress enacted P.L. 86-272 in order to clear up the confusion created by these cases. As noted by the Senate Report:
Persons engaged in interstate commerce are in doubt as to the amount of local activities within a State that will be regarded as forming a sufficient ... connection] with the state to support the imposition of a tax on net income from interstate operations and “properly apportioned” to the State.
[Heublein, supra, 409 U.S. at 280, n. 5, 93 S.Ct. at 487, n. 8, 34 L.Ed.2d at 478, n. 8 (quoting S.Rep. No. 658, 86th Cong., 1st Sess., 2-3 (1959)).]
In Heublein, the Supreme Court concluded that P.L. 86-272 was “designed to define clearly a lower limit for the exercise of [state taxing] power,” and that providing “[c]larity that would remove uncertainty was Congress’ primary goal.” Id. at 280, 93 S.Ct. at 487, 34 L.Ed.2d at 478, n. 8. However, until Wrigley, the scope of the minimum standard was not entirely clear.
In Wrigley, the Court considered whether the in-state business activity of William Wrigley, Jr., Co., an Illinois manufacture of chewing gum, and its Wisconsin salesmen were sufficient to sup *593 port imposition of Wisconsin’s franchise tax. Wrigley objected to the imposition of the franchise tax, asserting that its business activity was limited to the solicitation of orders and thus immune from taxation under P.L. 86-272.
The Court reviewed the history of P.L. 86-272 and noted that two issues remained unresolved. First, the Court noted that the scope of the term solicitation of orders was far from clear. Second, the Court considered whether the statute authorized an exception whereby a de minimis amount of non-solicitation activity would not result in the loss of tax immunity. Wrigley, supra, 505 U.S. at 223, 112 S.Ct. at 2453, 120 L.Ed.2d at 185.
In determining the scope of “solicitation of orders,” the Court rejected the argument that immunity only exists for “explicit verbal requests for orders” and found that it included “any speech or conduct that implicitly invites an order.” Ibid. The Court went on to set forth a guideline to establish what additional conduct, other than explicit verbal requests, would be protected under P.L. 86-272.
[TJhe next (and perhaps the only other) clear line is the one between those activities that are entirely ancillary to requests for purchases — those that serve no independent business function apart from their connection to the soliciting of orders — and those activities that the company would have reason to engage in anyway but chooses to allocate to its in-state sales force____Providing a car and a stock of free samples to salesmen is part of the “solicitation of orders,” because the only reason to do it is to facilitate requests for purchases. Contrariwise, employing salesmen to repair or service the company’s products is not part of the “solicitation of orders,” since there is good reason to get that done whether or not the company has a sales force. Repair and servicing may help to increase purchases; but it is not ancillary to requesting purchases, and cannot be converted into “solicitation” by merely being assigned to salesmen.
[Wrigley, supra, 505 U.S. at 228-30, 112 S.Ct. at 2456-57, 120 L.Ed.2d at 189-90.]
The Court also recognized the existence of a de minimis exception for activities that were outside the scope of solicitation of orders and would generally not be protected by P.L. 86-272.
Whether a particular activity is a de minimis deviation from a prescribed standard must, of course, be delei'mined with reference to the purpose of the standard. Section 381 was designed to increase — beyond what Northwestern States suggested was required by the Constitution — the connection that a company could have with a State before subjecting itself to tax. Accordingly, whether in-state activity other than “solicitation of orders” is sufficiently de minimis to avoid loss of the tax *594 immunity conferred by § 381 depends upon whether that activity establishes a nontrivial additional connection with the taxing State,
[Wrigley, supra, 505 U.S. at 232, 112 S.Ct. at 2458, 120 L.Ed.2d at 191 (emphasis added).]
The Court applied the above standards to six activities performed by Wrigley, which the State of Wisconsin maintained went beyond solicitation of orders: the replacement of stale gum by sales representatives; the supplying of gum through agency stock checks; the storage of gum, racks, and promotional materials; the rental of space for storage; the regional managers’ recruitment, training, and evaluation of employees; and the regional managers’ intervention in credit disputes. The Court found that the replacement of stale gum, the supplying of gum through “agency stock checks,” and the storage of gum were not ancillary to solicitation and thus not immune. Id. at 233, 112 S.Ct. at 2458-59, 120 L.Ed.2d at 192. Relevant to the present matter, the Court in discussing the replacement of stale gum, found that:
Wrigley would wish to attend to the replacement of spoiled product whether or not it employed a sales force. Because that activity serves an independent business function quite separate from requesting orders, it does not qualify for § 381 immunity. Although Wrigley argues that gum replacement was a “promotional necessity” designed to ensure continued sales, it is not enough that the activity facilitate sales; it must facilitate the requesting of sales, which this did not.
[Ibid, (citations omitted).]
The Court also rejected Wrigley’s argument that the activity must be considered part of solicitation because it was not significant. The Court found that the activity was not a simple act of courtesy “that occurred only because a salesman happened to be on the scene and did not wish to ‘harm the company;’ Wrigley deliberately chose to use its sales force to engage in regular and systematic replacement of stale product on a level that amounted to several thousand dollars per year.” Id. at 233, n. 8, 112 S.Ct. at 2459 n. 8, 120 L.Ed.2d at 192, n. 8 (citation omitted). The Court also rejected the argument of Wrigley that, although the activities were outside the solicitation of orders, taken together or singly they were de minimis and thus within the immunity provided by P.L. 86-272. The Court stated:
We need not decide whether any of the nonimmune activities was de minimis in isolation; taken together, they clearly are not. Wrigley’s sales representatives *595 exchanged stale gum, as a matter of regular company policy, on a continuing basis, and Wrigley maintained a stock of gum worth several thousand dollars in the State for this purpose, as well as for the less frequently pursued (but equally unprotected) purpose of selling gum through “agency stock cheeks.” Although the relative magnitude of these activities was not large compared to Wrigley’s other operations in Wisconsin, we have little difficulty concluding that they constituted a nontrivial additional connection with the State
[Id. at 235, 112 S.Ct. at 2460, 120 L.Ed.2d at 193.]
In New Jersey, a review of reported cases indicates that this court has never considered P.L. 86-272 as it would apply to the activities of delivery drivers or regarding the pick-up of packages. After Wrigley, this court considered P.L. 86-272 in two reported opinions: Pomco Graphics, supra, 13 N.J.Tax 578 (finding that salesmen who marketed products by making telephone calls and personal visits to conduct product presentations were engaged in activities ancillary to solicitation of orders and therefore protected), and Home Impressions, Inc. v. Director, Div. of Taxation, 21 N.J.Tax 448 (Tax 2004) (finding that the immunity from taxation provided by P.L. 86-272 only applies to a tax based directly on the net income of a foreign corporation and does not apply to the minimum flat tax under N.J.S.A. 54:10A-5(e)).
IY.
There is no question that Asher is doing business in New Jersey. The only issue for determination is whether its activities are immune from New Jersey taxation as a consequence of the federal statute.
As previously discussed, I find that the activities of Asher’s salesmen and its independent sale agents in New Jersey are clearly and classically within the protected solicitation activities covered by P.L. 86-272. However, those activities which raise an issue under the statute are the activities of Asher’s delivery drivers in New Jersey who do not directly solicit sales, take orders or otherwise sell Asher’s products. They deliver Asher’s candies on a regular basis, in trucks owned by Asher and bearing the company name, with a sales value of between $2 and $3 million per year to customers in New Jersey. They collect payment from some of Asher’s customers on a regular basis and from others on a *596 less regular basis. They accept, occasionally, returned candies, and they may have on at least one occasion picked up baking supplies for Asher in New Jersey and been involved with Asher’s “Chocolate Shop Program.”
These activities do not fall within the scope of solicitation of orders. They involve activities that exist independently of any sales activity. They may help facilitate sales by providing better service to customers but the activities do not help facilitate the requesting of sales, which is the standard established by the Court in Wrigley, supra, 505 U.S. at 232, 112 S.Ct. at 2458-59, 120 L.Ed.2d at 191-92 (“it is not enough that the activity facilitate sales; it must facilitate the requesting of sales”). Furthermore, in Wrigley, the Court’s finding that the picking up of stale gum by Wrigley salesmen amounted to more than solicitation is analogous to the present matter, in which Asher’s drivers picked up damaged, spoiled, or overshipped packages from New Jersey customers. Here, the argument that the drivers are engaged in the solicitation of orders is even less persuasive than in Wrigley because Asher’s drivers are not salesmen and were not regularly engaged in solicitation. In Wrigley, the people performing the non-protected activities were salesmen who were regularly engaged in the solicitation of orders. The activity of Asher’s delivery drivers can not be considered within the scope of solicitation of orders if, under Wrigley, salesmen, performing similar functions, were found to be engaged in activities beyond solicitation.
Additionally, I find that the drivers’ collection activities are outside the scope of solicitation of orders. The collection of both past and current accounts is a business activity that exists independent of the solicitation of orders, which was not supervised by the sales department of Asher.
The court is aware of the split among some states regarding whether delivery by a company’s own drivers rather than by common carrier creates an automatic loss of immunity under P.L. 86-272.[3] However, the Director does not raise this *597 argument.* **[4] It appears that the New Jersey Division of Taxation has joined those states in which delivery by company drivers in company trucks does not jeopardize P.L. 86-272 tax immunity. In 25 New Jersey State Tax News 4 (Spring 1996), the Director stated:
The Division of Taxation has clarified its position regarding delivery of goods into the State by Non-Transportation and/or Delivery Service Companies for Corporation Business Tax purposes.
Any corporation not in the business of delivery or transport of goods (such as manufacturers or wholesalers, etc.) who delivers “their own” products in their own trucks to customers in New Jersey is deemed to be “doing business” in New Jersey pursuant to N.J.A.C. 18:7 — 1.9(b).
However, if the activities do not exceed mere delivery, this coiporation would be protected under P.L. 86, c. 272 and the minimum corporate tax would be due. Some of the activities that are considered to be beyond mere delivery would be pick-up, set-up, installation, removal, pouring and inserting.
[Ibid, (emphasis added).]
The Division specifically instructs that the driver activity must be limited to “mere delivery.” Ibid. Picking up packages and collecting past-due accounts are more than mere delivery and do not fall within the activity allowed by the Division. Thus, the *598 activity of Asher’s drivers in New Jersey exceeds solicitation of orders protected by P.L. 86-272 as well as the Director’s stated policy providing protection for “mere delivery.”
Furthermore, although not dispositive of the matter, it is interesting to note that this court’s and the Director’s findings that Asher’s activities are outside the scope of solicitation of orders are consistent with the Multistate Tax Commission’s guidelines on protected and unprotected activity under P.L. 86-272. See Statement of Information Concerning Practices of Multistate Tax Commission and Signatory States Under Public Law 86-272. As amended through July 27, 2001, the guidelines include the following in-state activities among the list of activities that are not protected by P.L. 86-272: “Collecting current or delinquent accounts, whether directly or by third parties, through assignment or otherwise” and “[packing up or replacing damaged or returned property.”
The only remaining question is whether the activity, although outside the scope of mere solicitation of orders, is de minimis, of such limited scope and frequency, that it would not void the immunity under P.L. 86-272. Consistent with the Court’s holding in Wrigley, I find that even if each of these activities, taken alone might be de minimis (and I find that even if the pick up of returns may be de minimis, the collection of past-due accounts is not), the nature and cumulative amount of Asher’s activities in New Jersey during the three year period that is before the court go well beyond those de minimis activities protected by P.L. 86-272, and discussed in Wrigley, supra, 505 U.S. at 235, 112 S.Ct. at 2460, 120 L.Ed.2d at 193.[5] I am not persuaded by Asher’s argument that its unprotected activities consisted of a relatively small amount when compared with its total number of packages delivered to New Jersey customers or its total amount of revenue *599 generated in the state. As indicated in Wrigley, supra, 505 U.S. at 235, 112 S.Ct. at 2460, 120 L.Ed.2d at 193, the quantity of activity is less important than the fact that there is a company policy, whether written or not, regarding the pick up of returns and the collection of delinquent accounts by company employees. The regularity of the pick-up of packages and collection of accounts, irrespective of the total amount, and the company policy, makes the activity sufficiently systematic to warrant a finding that the activity constitutes a non-trivial connection to New Jersey and therefore is not de minimis. This is not a ease in which a delivery driver picked up a package or payment on a few occasions as a courtesy to the customer.[6]
Finally, the apportionment method of the CBT, as previously discussed, provides a fair and constitutional method for New Jersey to tax Asher on its actual exploitation of the New Jersey market. See Complete Auto Transit, supra (upholding an apportionment method substantially identical to N.J.S.A. 54:10A-6).
For all of the above reasons, plaintiffs contention that for the tax years 1999, 2000 and 2001, it was immune from the New Jersey Corporation Business Tax by virtue of P.L. 86-272 is *600 rejected and its complaint is dismissed. Plaintiff must file New Jersey Corporation Business Tax returns for 1999, 2000 and 2001, and pay any additional amounts of tax, penalty and interest due based in those returns.

 There appears to be some possible confusion over the 2001 number. A letter from Asher initially stated the COD amount collected for that year was $76,669.00.

N.J.S.A. 54:10A-2 provides, in relevant part:
Every domestic or foreign corporation ... shall pay an annual franchise tax ... for the privilege of having or exercising its corporate franchise in this State ... or for the privilege of doing business, employing or owning capital or property or maintaining an office, in this State.

 Other state courts finding that mere delivery does not jeopardize tax immunity under P.L. 86-272 are Massachusetts, National Prívate Truck Council v. *597 Commissioner, 426 Mass. 324, 688 N.E.2d 936, 938-941 (1997) and Virginia, Virginia Dep't of Taxation v. National Private Truck Council 253 Va. 74, 480 S.E.2d 500 (1997) (finding a Virginia regulation that did not exempt delivery by other than a common carrier to be in violation of P.L. 86-272, which did not specify any particular method of delivery). New York also has adopted a policy allowing delivery by other than common carrier without jeopardizing P.L. 86-272 immunity. See N.Y. Adv. Op. TSB-A-84 (11)C (September 14, 1984). See also S.C. Tax Comm’n, Revenue Ruling No. 98-3 (January 21, 1998); Ariz. Dep’t of Revenue, CTR 99-5 (May 25, 1999); Tex. Comptroller of Public Accounts Decision No. 36,590 (January 20, 2000); Neb. Dep't of Revenue, Ruling 24-01-01, (February 22, 1001). But see Fla. Tech. Assistance Advisement No. 95(c)1-004 (March 17, 1995) (advising that private delivery is not protected by P.L. 86-272); Ill. Dep't of Revenue, 1 Letter No. 00-0002-GIL (January 11, 2000), 2000 WL 246217.

 The Director's position with regard to Sales and Use Tax (N.J.S.A. 54:32B-1 thru-29) is to the contrary. See e.g., Falcone v. Director, Div. of Taxation, 12 N.J.Tax 75 (Tax 1991). In Falcone, this court held that a business that made deliveries in its own trucks to New Jersey customers could be required to collect sales tax under N.J.S.A. 54:32B-2(f), which imposes a sales tax on the transfer of possession of tangible personal property in New Jersey. Falcone, supra, 12 N.J.Tax at 86-87. The court concluded that constitutional due process and commerce clause requirements were not violated and that a transactional nexus existed for products delivered by the vendor in New Jersey. Ibid.

 Plaintiff has indicated that its practice of having delivery drivers collect money from customers was discontinued in 2003. Thus, activities by Asher after that date might be protected from liability for New Jersey CBT by P.L. 86-272. I did not examine the facts for that time period and therefore, make no findings or rulings except for the three year period under review in this case.

 Although not controlling, this court's conclusion is consistent with the Multistate Tax Commission's guidance regarding what constitutes de minimis activity in light of Wrigley. As amended through July, 2001, The Statement of Information Concerning Practices of Multistate Tax Commission and Signatory States Under Public Law 86-272 states:
An activity conducted within a taxing State on a regular or systematic basis or pursuant to a company policy (whether such policy is in writing or not) shall normally not be considered trivial. Whether or not an activity consists of a trivial or non-trivial connection with the State is to be measured on both a qualitative and quantitative basis. If such activity either qualitatively or quantitatively creates a non-trivial connection with the taxing State, then such activity exceeds the protection of P.L. 86-272. Establishing that the disqualifying activities only account for a relatively small part of the business conducted within the taxing State is not determinative of whether a de minimis level of activity exists. The relative economic importance of the disqualifying in-state activities, as compared to the protected activities, does not determine whether the conduct of the disqualifying activities within the taxing State is inconsistent with the limited protection afforded by P.L. 86-272.
{Id. at 2-3]